MCDONALD CARANO WILSON LLP
Kaaran Thomas, Esq. (NV Bar 7193)
Amanda M. Perach, Esq. (NV Bar No. 12399)
100 West Liberty Street
Tenth Floor
Reno, Nevada 89501
Telephone Number: (775) 788-2000
kthomas@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Electronically filed July 13, 2015*

*Proposed Counsel for Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MATHESON FLIGHT EXTENDERS, INC.,<br><br>Debtor in Possession. | Case No.: BK-N-15-50541-BTB<br><br>Chapter 11<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SECOND MOTION TO CONTINUE HEARING ON DEBTOR'S MOTION FOR ORDER (1) APPROVING DISCLOSURE STATEMENT; (2) SETTING DEADINES FOR BALLOTING AND APPROVING FORM OF NOTICE AND BALLOT; AND (3) SETTING CONFIRMATION HEARING AND RELATED DEADLINES [DE 125] AND REQUEST TO SET A STATUS HEARING ON SEPTEMBER 9.**<br><br>**Hearing Date: August 11, 2015**<br>**Hearing Time: 2:00 P.M.** |

The Official Committee of Unsecured Creditors in the above-entitled bankruptcy case, (the "Committee") hereby requests that the hearing on Matheson Flight Extenders, Inc. (the "Debtor" or "DRC") *Motion for Order (1) Approving Disclosure Statement (2) Setting Deadlines for Balloting and Approving Form of Notice and Ballot; and (3) Setting Confirmation Hearing and Related Deadlines* (the "Motion") moved to September 9, 2015, be continued to a date to be set immediately following the resolution of the Debtor's pretrial motions filed in the Colorado Federal District Court [Camara et.al. v. Matheson Flight Extenders, Inc. and Matheson Trucking, Inc., Civ. Action No. 12-CV-03040-CMA-CBS] (the "Federal Lawsuit"). The Committee also

1  requests the Court to set a status hearing at the time currently set for approval of the Disclosure
2  Statement (September 9). This Motion is supported by the record in this case, the points and
3  authorities below, the Request for Judicial Notice of the Defendant's post-trial motions filed in
4  the Federal Lawsuit [DE 146] and the Declaration of Kaaran Thomas in support of the Motion.

### STATEMENT OF FACTS[1]

1. This case was filed on April 19, 2015.

2. The Committee was appointed May 20.

3. McDonald Carano Wilson LLP, ("MCW") the Committee's proposed counsel, filed its Employment Application on June 2. [DE85]. The U.S. Trustee signed off on the Application; however, Debtor objected to MCW's ex parte request for employment and also objected to having the Application heard on shortened notice. [DE87 and 92]. The hearing is currently set for July 28.

4. On June 4, Debtor also sent a letter to the U. S. Trustee seeking to remove every member of the Committee. The Trustee refused to grant the request. Debtor has now filed a Motion for an order directing the Trustee to remove every member of the Committee [DE 133] that is also set for hearing July 28.

5. Debtor has also objected to the Committee's Rule 2004 Examinations of the Custodian of Records of both Debtor and its affiliate Matheson Trucking, Inc. ("Trucking") [DE 119]. These Motions are also set for hearing July 28. Although the Committee has now served subpoenas under Rule 9016, which became applicable when Debtor filed its Motion to Approve its Disclosure Statement, the Committee has already received push back from Trucking's new counsel, who refused to accept service of the subpoena, and Trucking's registered agent, who attempted to deny that he was the registered agent.

---

[1] The facts set forth in this Section are supported by the Thomas Declaration.

6.       As a result, the Committee has been completely stymied in discovering the critical facts regarding the Debtor's acts, conduct and property and most importantly its relationship with Trucking, who is jointly liable with the Debtor on over fourteen million dollars of debt and the beneficiary of Debtor's attempts to stop collection efforts against it. Even assuming that the Debtor and Trucking suddenly decide to cooperate the Committee and its professionals would not have the opportunity to review the requested material and prepare for a hearing on the Disclosure Statement until mid-September.

7.       At the time the initial disclosure hearing was set the undersigned contacted Debtor's counsel Cecelia Lee to discuss these issues.  The Committee suggested that Debtor use July 28 as a status hearing to discuss discovery and other issues relating to the Debtor's plan. Ms. Lee refused and instead offered the Committee until August 3-five days after the hearing to approve the Committee and its professionals- to file its objections to the Disclosure Statement. The offer was so unreasonable that it did not justify a response.  Once Debtor had reviewed the Committee's motion to continue the initial August 11 hearing Debtor apparently realized the merits of the Committee's position.   However, rather than discussing the issues with the Committee, Debtor unilaterally continued the hearing to September. The Committee expects the Debtor will amend its plan shortly before the proposed September hearing and once again seek to avoid discovery.

8.       The Debtor's Plan contains at least one request that is beyond this Court's subject matter jurisdiction:  that the Court enter a "supplemental injunction" preventing creditors of Trucking from collecting their debts from Trucking after confirmation of the Debtor's plan. [DE 124 pages 26-27].

/ / /

/ / /

**BASIS FOR CONTINUANCE**

*A.    There is no need for a plan and disclosure statement hearing prior to resolution of post-trial motions in the Federal Lawsuit.*

9.    There are critical motions still pending regarding the judgment entered in the Colorado Federal District Court [Camara et.al. v. Matheson Flight Extenders, Inc. and Matheson Trucking, Inc., Civ. Action No. 12-CV-03040-CMA-CBS] (the "Federal Lawsuit") that was the alleged reason Debtor filed this Chapter 11 proceeding.  The Lawsuit resulted in the $14,968,100.00 judgment against Debtor and Trucking in favor of the Plaintiff/creditors of this estate (the "Plaintiff Claims").  [DE 124 page 11].  The Plaintiff Claims constitute more than eighty percent of the debt of this estate.

10.    Debtor filed a Motion for Relief from Stay [DE 37] so that the Colorado Federal Court could resolve Debtor's and Trucking's Motion for Remittitur; Renewed Motion for Judgment as a Matter of Law; and Motion for New Trial. These Motions are attached to the Request for Judicial Notice [DE 146].  A resolution in favor of Debtor and/or Trucking could materially alter the Plaintiff Claims and may even eliminate some of them.  The hearings also involve the Plaintiff/creditors' post trial motions (Bill of Costs; Plaintiffs' Motion to Amend Judgment and Award Front Pay and Interest on Back Pay; Plaintiffs' Motion for Attorneys' Fees and Expert Witness Fees). The outcome of these hearings may also affect the amount of Plaintiff Claims against Debtor and Trucking. If a new trial is ordered, the Plaintiff Claims may become unliquidated claims possibly eliminating the need for this Chapter 11 proceeding.

11.    The trial court's determination of the claims pursuant to these post-trial motions will determine the amount of the Plaintiff Claims "allowed" in this case, regardless of whether Debtor files an appeal.  "[t]he appealability of a judgment…does not hinder its preclusive effect" such that a judgment pending appeal is deemed a final judgment for purposes of res

judicata and collateral estoppel. MACTEC, Inc. v. Gorelick, 427 F.3d 821, 832 (10th Cir. 2005). [See also the cases and authorities cited in the Committee's Opposition to Debtor's Motion for Order Directing the United States Trustee to Remove Members of the Committee of Unsecured Creditors. Filed on July 13.]

12. Debtor's reasons for the September hearing [DE 124 page 23] are unpersuasive Expenditure of management time, loss of customer confidence and retention of key personnel are issues faced by every Chapter 11 debtor. Yet many successfully emerge from the reorganization more than a year after the filing. The "concerns" are mere speculation, unsupported by any declarations or hard evidence required by Local Rule 9014. Neither is Debtor's statement that it wishes "…to ensure that it will be in a position to fulfill its obligation to the Postal Service" and "to capitalize on the income generated by those services for the benefit of repaying its creditors".

*B.    The Disclosure Statement provides no information regarding feasibility, the proposed "new value" contribution" or the value of Debtors' and Matheson Trucking's business and assets.*

13. The current disclosure statement contains promises to provide information rather than the actual adequate information required by the Bankruptcy Code Section 1125 (a) (1) and the U.S. Trustee guidelines. The missing information includes the financial projections for the feasibility analysis [DE 124 page 23-24 and 35], any information regarding the alleged new value contribution [DE 124 page 70 section 1.0]; the documents that allegedly show that Matheson Trucking has "little or no profitability" [DE 124 fn 7], the report of the "business valuation expert" the debtor is in the "process of employing" [DE 124 page 17] and the missing information on schedules and statements of financial affairs [DE 124 page 16 section 3].

14. The Plan is based upon payments from "Net Operating Income" [Plan DE 124 page 58 section 5.01]. However, there is no clue regarding how this is calculated. However, the

Debtor makes no firm commitment for these payments. Buried in the Plan is the statement that "Distributions under the Plan will be made from the Debtor's Net Operating Income." Net Operating Income is defined in the Pan as "The income of the Reorganized Debtor, including the New Value Contribution minus Operating Costs and Operating Reserves." [DE 124 page 52]. None of these concepts is supported by numbers. More seriously, the term "Operating Reserves" is to be determined by the Debtor in "good faith". [DE 124 page 52]. This makes it possible for the Debtor to "comply" with the Plan indefinitely, without making any payments. The term for paying the Class 6 subordinated claims extends to fifteen years after confirmation. There is no requirement for minimum payments during any year of the plan.[DE 124 page 56]. Debtor even reserves to itself the right to engage in "corporate restructuring transactions" and to "change the business or corporate form" of the Debtor. [DE 124 page 57 Section 5.0.1]. Even if the disclosure statement contained proper figures and projections they would be inadequate until the Federal Lawsuit determines the amount of Plaintiff Claims.

15.   Debtor does not even promise to provide Matheson Trucking's financial statements, income statements, bank accounts or other indicia of financial condition. There is no discussion of the fate of the "Professional Services Agreement Between Matheson Trucking Inc. And Matheson Flight Extenders, Inc. attached to the Application to Employ Debtor's counsel [DE 56 pages 13—18.] Instead, there is a promise to "submit [Debtor's] expert's analysis as part of the Plan Supplement prior to confirmation." In other words, creditors will be given no opportunity to conduct discovery over this critical confirmation factor until the current plan process is almost concluded.

16.   In summary, the Plan is based upon thin air. The disclosure statement is really a proposal to provide disclosure.

17.     The only feasible explanation for Debtor's course of action is its concern that the Committee seeks to diligently pursue its investigation of the Debtor and its affiliates.

    C.     *The Debtor's Plan seeks an impermissible injunction to eliminate the joint liability of Matheson Trucking for Debtor's obligations and is unconfirmable on its face*

18.     The plan process should also be delayed because the current plan seeks a "Supplemental Injunction" preventing collection efforts against Debtor's affiliate Matheson Trucking beyond confirmation of Debtor's Plan. [Disclosure Statement DE 124 pages 26-27]. The Ninth Circuit has already determined that a bankruptcy court does not have subject matter jurisdiction to approve such a plan.

19.     In <u>In re American Hardwoods</u>, Inc. 885 F.2d 621 (9$^{th}$Cir 1989) the court of appeals upheld the district court's ruling that the bankruptcy court had lacked power to enjoin a creditor from enforcing a state court judgment against non-debtor guarantors, who were officers of the corporation beyond the confirmation of the Debtor's plan. Id. at 625–26.

    D.     *The September hearing should be a status hearing and the Court should set deadlines regarding full disclosure and final plan terms that permit Debtor to negotiate plan terms with an informed Committee.*

20.     The Committee and the Debtor and Trucking's new counsel [Sallie Arbuckle of Downey Brand] who appeared in this case on July 1, must have the opportunity to sit down and negotiate a reasonable, confirmable plan.  This cannot be accomplished if the Debtor continues to play hide the ball and if the Committee is not permitted to form and to conduct discovery. The Committee has acted diligently to discovery material facts, but its efforts have been thwarted at every turn. The Court should enter a pre-trial order setting fixed deadlines for discovery and a deadline for Debtor to file its final plan.  The structure will permit the Debtor and the Committee to negotiate (and mediate if necessary) a confirmable plan.

/ / /

/ / /

*E.     The Committee is entitled to a continuance*

21.     There is no mechanical test for granting a continuance. Courts have opined on when the denial of a continuance is a clear abuse of discretion and found that it involves a case-by-case analysis. <u>United States v. Kloehn</u>, 620 F.3d 1122, 1126–27 (9th Cir.2010). Four factors are considered when reviewing requests for continuances: (1) the extent of the movants' diligence in their efforts to ready a defense prior to the date set for hearing; (2) how likely it is that the need for a continuance will be met if the continuance is granted; (3) the extent to which granting the continuance would inconvenience the court and the opposing party, including its witnesses; and (4) the extent to which the moving party might suffer harm as a result of the denial of the continuance. <u>United States v. Flynt</u>, 756 F.2d 1352, 1358-59 (9th Cir.1985) (internal citations omitted). Most important is the requirement that the moving party demonstrate they would suffer prejudice as a result of the denial. Id. at 1359.[2]

22.     The Committee's request meets each of these tests. The Debtor has thwarted every effort the Committee has made to prepare for this case. The requested continuance will permit the post-trial motions in the Federal Lawsuit to be resolved and may result in material improvements to the Debtor's financial condition. Debtor has not provided any evidence that such a continuance would prejudice it in any way. And the continuance will permit reasoned discussions with the Debtor and Trucking that could facilitate a confirmable plan. Finally, it is without question that the Committee and the creditors and the estate will be prejudiced if the continuance is not granted. They will be forced to spend time and money defending a plan that has major problems, without adequate discovery to aid them. The lack of disclosure will also prejudice the Court's ability to arrive at a supportable conclusion regarding Confirmation.

---

[2] *See also* <u>In re OccMeds Billing, Services, Inc</u>. Not Reported in B.R., 2011 WL 4503019 (9th Cir.BAP (Cal.) 2011).

WHEREFORE, the Official Committee of Unsecured Creditors prays that the Court continue the hearing to approve Debtor's Disclosure Statement, set a status conference on the September 9 date currently set to consider Debtor's disclosure statement and grant such other and further relief as is just.

RESPECTFULLY SUBMITTED this 13th day of July 2015.

**MCDONALD CARANO WILSON LLP**

By */s/ Kaaran Thomas*
100 West Liberty Street
Tenth Floor
Reno, Nevada  89501
Telephone Number: (775) 788-2000
kthomas@mcdonaldcarano.com

*Proposed Counsel for Official Committee of Unsecured Creditors*