LEE & HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 3344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone (775) 324-1011
Fax (775) 324-0113
Email: c.lee@lee-high.com
Email: e.high@lee-high.com

HARTMAN & HARTMAN, LTD.
Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone (775) 324-2800
Fax (775) 324-1818
Email: notices@bankruptcyreno.com

Attorneys for Debtor Matheson Flight Extenders, Inc.

Electronically Filed September 29, 2015

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MATHESON FLIGHT EXTENDERS, INC.,<br><br>Debtor. | Case No.: BK-N-15-50541-BTB<br><br>Chapter 11 Case<br><br>**MOTION TO APPROVE COMPROMISE**<br><br>Hearing Date:  November 2, 2015<br>Hearing Time:  1:30 p.m. |

Matheson Flight Extenders, Inc. ("MFEI" or "Debtor") requests an order approving the terms of the settlement between and among Debtor, Matheson Trucking, Inc. ("MTI" or "Trucking"), on the one hand, and seven individuals referred to as the Colorado Plaintiffs, as more specifically described below, on the other hand (the "Settlement Agreement"). The Settlement Agreement, the terms of which will be incorporated into Debtor's and Trucking's jointly proposed Second Amended Plan of Reorganization, provides for full satisfaction of the amount owed by the Debtor and Trucking to Colorado Plaintiffs by the payment of $7.3 million, consisting of an initial payment of $2.3 million with the remaining $5 million to be paid in quarterly installments over a period of eight (8) years.

This Motion is made pursuant to Fed. R. Bankr. P. 9019 and is supported by the attached exhibits, the <u>Declaration of Charles Mellor In Support of Motion to Approve Compromise</u> (the "Mellor Declaration") and the <u>Declaration of Cecilia Lee in Support of Motion to Approve Compromise</u> (the "Lee Declaration"). In addition, MFEI and Trucking request the Court to take judicial notice of the papers on file in this case.  Fed. R. Evid. 201.

## I.    SUMMARY OF RELIEF REQUESTED

On August 19, 2015, the Colorado Plaintiffs submitted a written settlement counter-proposal to MFEI and Trucking.  The proposal consisted of three separate alternative settlement scenarios. Significantly, the Colorado Plaintiffs stated, "Please note that the below counter offers are our final offers.  We are no longer willing to negotiate this matter any further".  **Exhibit 2**. On August 21, 2015, MFEI's Chief Operating Officer and General Counsel, Charles Mellor ("Mellor"), responded to the proposal by selecting one of the three alternative scenarios. **Exhibit 3.**  Mellor's acceptance did not alter the payment amount or payment term. Mellor included ancillary terms which were appropriate based on presumption, rule and usage; he also specified an initial payment date of March 1, 2016, which is a reasonable time for performance under the circumstances of this case, most importantly, the time for obtaining confirmation of a plan and the Debtor's finances. Notably, the Colorado Plaintiffs have been entirely aware of all of the circumstances in this case based on their active involvement in this case both individually and, for two of them, as members of the Committee of Unsecured Creditors.   Upon Mellor's acceptance, there was an enforceable agreement between the Debtor and Trucking, on the one hand, and the Colorado Plaintiffs, on the other hand, to resolve their claims for the total consideration of $7.3 million.

MFEI and Plan co-proponent MTI are proceeding with amendments to their Disclosure Statement and Plan of Reorganization to incorporate the terms of the Settlement Agreement and will request approval of both in compliance with applicable rules and on a schedule acceptable to the Court.   To facilitate that process, they seek this Court's approval of the terms of the Settlement Agreement pursuant to Fed. R. Bankr. Pro. 9019.

/ / /

## II.    RELEVANT FACTUAL HISTORY

### A.    Debtor's History

The Debtor has been a family-owned and operated business since its inception.  It provides extensive mail handling services under contract with the United States Postal Service ("USPS" or the "Postal Service") and others.  The Debtor has been providing this service to the USPS since August 2001.  MFEI's contracts with the USPS account for approximately eighty-four percent of its business.  MFEI offers a comprehensive range of ground support and terminal handling services to the USPS and certain other customers in approximately 20 hub facilities spread across 19 states coast-to-coast. MFEI is primarily a service company with more than 600 employees nationwide, which it refers to as material handlers.  The Debtor also contracts with vendors in South Dakota and Great Falls, Montana for employees to staff those facilities. Generally, the material handlers unload airplanes, sort mail, and reload mail into airplane containers for outbound destinations at hubs throughout the United States.  MFEI will handle approximately 3.4 million pieces of mail, or 51,000,000 pounds, each month and this volume will spike to approximately 5 million pieces of mail during the peak season in November and December.

The Debtor's labor force roughly doubles from 600 employees to roughly 1200 employees during the peak season, thus providing important seasonal employment to the economy.  The peak season contracts are with the Postal Service, which is Debtor's largest customer and the source of more than 80 percent of its revenue.  In addition to increasing the Debtor's revenue, servicing the Postal Service's needs during the holiday season produces unquantifiable benefits to the Debtor in its relationship with the Postal Service.  These constitute important business reasons for the Debtor to maximize its ability to fulfill these contracts.

### B.    The Colorado Litigation

In November 2012, twelve plaintiffs filed the complaint in the United States District Court for the District of Colorado entitled Camara et al. v. Matheson Flight Extenders, Inc. and Matheson Trucking, Inc., Civil Action No.: 12-CV-03040-CMA-CBS (the "Colorado Action"). Plaintiffs alleged that, starting in late 2010, they were discriminated against and harassed based

on race and national origin, and that they were subjected to retaliation. The Plaintiffs originally consisted of twelve present and former employees of Matheson Flight Extenders, Inc.[1]  One of the Plaintiffs voluntarily withdrew (and remains employed with Matheson), and four settled their claims before the case went to trial. The four settling plaintiffs are Moussa Dembele, Mohamed Kaba, Cresencio Sanchez and Ernest Williams, who entered into separate Settlement Agreements with the Debtor and MTI prepetition and which Settlement Agreements are not in default.  The remaining seven Plaintiffs are Mahamet Camara, Andre DeOliveira, Bemba Diallo, Salif Diallo, Macire Diarra, Ernie Duke and Dean Patricelli.    These individuals are referred to as the "Colorado Plaintiffs" and they are the individuals who have settled with the Debtor and Trucking

The Debtor and Trucking have at all times vigorously disputed the Colorado Plaintiffs' claims, and maintain that they at no time experienced harassment, discrimination, or retaliation. In the lawsuit they challenged legitimate business decisions such as (1) a December 2010 furlough made necessary by a temporary suspension of a United States Postal Service contract; (2) re-implementation of a seniority-based shift bid, which some (but not all) Plaintiffs believed was unfair; and (3) other employment decisions that affected some (but not all) Plaintiffs. These decisions were in no way motivated by race, national origin, or the fact that any Plaintiff (allegedly) complained of discrimination. Notably, the Plaintiffs' claims were disputed by both African and African-American employees at trial, including African American Station Manager, John Handy; African American Lead, Wiley Coleman; Haitian Material Handler, Yonel Louissaint; and African Material Handler, Noumady Sissoko. The Plaintiffs brought the lawsuit after a recruiting effort in which Plaintiffs told coworkers they needed to "stick together to sue the company, even if they had to lie." Two Plaintiffs and another employee engaged in shocking behavior toward coworkers who refused to join the lawsuit.  This included threatening and intimidating coworkers who did not join the lawsuit; telling a female coworker who refused to join the lawsuit that they would bring their gang and sexually assault her; pushing coworkers;

---

[1]  MFEI and MTI were named as Defendants and were ultimately determined to be a single employer for purposes of Colorado law.  Colorado Plaintiffs withdrew their claims against Mark Matheson before trial.

Lee & High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011
(775) 324-0113

and, in one case, throwing objects at a coworker.

The lawsuit was tried to a jury for twelve days starting January 26, 2015. At trial, the Court excluded the most probative evidence demonstrating Colorado Plaintiffs' improper recruiting efforts, intimidation, threats and violence. On February 11, 2015, the jury found that Debtor and MTI were a single employer under Colorado law and returned a verdict in Colorado Plaintiffs' favor on all claims awarding damages against Debtor and MTI.  On February 27, 2015, the Court entered Final Judgment for the full amount of damages awarded by the jury, plus post-judgment interest for a total of $15,280,012.

On April 19, 2015 ("Petition Date"), the Debtor filed its voluntary chapter 11 petition and has continued to operate its business as a Debtor-In-Possession.

**C.    Debtor's Motion to Modify the Automatic Stay.**

On April 29, 2015, the Debtor filed its Motion to Modify the Automatic Stay to allow certain pending motions in the Colorado Litigation to proceed and, to the extent necessary, to allow an appeal therefrom to the Tenth Circuit Court of Appeals.  Docket No. 37.  The Court conducted a hearing on this Motion on May 19, 2015, Docket No. 42, and granted the Motion in its entirety at that hearing.  Docket No. 79.  As a result, the Colorado Litigation may proceed as to certain post-trial motions and, to the extent necessary, appeal to the Tenth Circuit.  The post-trial motions for which the stay has been modified include Defendants' Motion for Remittitur; Defendants' Renewed Motion for Judgment as a Matter of Law; Defendants' Motion for New Trial; Colorado Plaintiffs' Motion to Amend Judgment and Award Front Pay and Interest on Back Pay; and Plaintiff's Motion for Attorneys' Fees and Expert Witness Fees.  The Colorado Court may enter final judgment and the Debtor may exercise any appellate rights therefrom. Enforcement of any judgment against the Debtor remains stayed and any satisfaction of the judgment will be through the Debtor's Plan.

**D.    June 15, 2015 Mediation**

The Colorado Plaintiffs, the Debtor and MTI attended a private mediation in Denver on June 15, 2015 before the Hon. Edward W. Nottingham, a retired United States District Court judge.   In an effort to meet the Colorado Plaintiffs' request to attend a mediation quickly and in

direct response to the Colorado Plaintiffs' plea of lack of any funds to contribute to the mediation, the Debtor in a show of good faith determined to assume the responsibility for the entire fee of the mediator.  The parties did not reach a resolution and continued their informal discussions following the conclusion of the proceedings on June 15, 2015.

In addition, the Colorado Plaintiffs filed proofs of claim, each of which is based on the Judgment and includes the amount of the Judgment; pre- and post-petition interest; costs; interest on back pay; front pay; and a proportionate amount of attorneys' fees.  The proofs of claim are summarized below:

| Name of Creditor | Claim No. | Filing Date | Amount of Claim |
|---|---|---|---|
| Bemba Diallo | 17 | 08/04/15 | $  2,488,887.94 |
| Mahamet Camara | 18 | 08/04/15 | $  2,455,419.10 |
| Salif Diallo | 19 | 08/04/15 | $  2,522,393.94 |
| Dean Patricelli | 20 | 08/04/15 | $  2,679,957.14 |
| Andre De Oliveira | 21 | 08/04/15 | $  2,461,634.18 |
| Macire Diarra | 22 | 08/04/15 | $  2,745,375.62 |
| Ernie Duke | 23 | 08/04/15 | $  2,528,514.54 |
| | | **TOTAL:** | **$ 17,882,182.46** |

**E.    The Settlement Negotiations that Led to the Settlement Agreement.**

1.    On or about August 19, 2015, Mellor, who is General Counsel for MFEI and MTI, was negotiating with the Colorado Plaintiffs' attorneys in the underlying lawsuit to try to reach a settlement with the Colorado Plaintiffs for a payment to them in full and final satisfaction of the Colorado Judgment.  Mellor Declaration.  As part of those negotiations, Mellor made two separate offers on behalf of MFEI and MTI.  First, on August 4, 2015, MFEI and MTI offered to pay $5.8 million to Colorado Plaintiffs in full satisfaction of their judgment:  $2.1 million initial payment, with $3.7 million paid over 8 years (for a total payment of $5.8 million).  Id.  When Colorado Plaintiffs failed to respond to this offer, Mellor sent it to their counsel again on August 7, 2015.  Id.  Because they had not responded to this initial offer, MFEI and MTI also gave the Colorado Plaintiffs an alternative offer on August 7, 2015:  2.1 million initial payment, with $3

million paid over 8 years with the first two years of payments capped at $75,000 per quarter and then increase to $100,000 per quarter for the ensuing six years, and with a $1.2 million balloon payment.  Id.

In response, Colorado Plaintiffs made a written counter-offer prepared by Colorado Plaintiffs themselves and delivered to Mr. Mellor through their attorneys.  Id.  A true and correct copy of the email from Justin M. Plaskov to Charles Mellor dated August 19, 2015 is attached hereto as **Exhibit 1.**   A true and correct copy of the Colorado Plaintiffs' written counter-offer that was attached to Mr. Plaskov's email (the "Counter-offer") is attached hereto as **Exhibit 2**.  Mellor Declaration.

In their Counter-offer, Colorado Plaintiffs provided three options for payment to them by MFEI and MTI to fully satisfy Judgment.  The first option was for payments totaling $7.3 million, with an initial payment of $2.3 million and the remaining $5 million paid over 8 years in quarterly payments.   The other two options involved an identical initial payment, but called for payment of a smaller total amount paid over a shorter time frame.  Id.  The Colorado Plaintiffs stated that, whichever payment method chosen by MFEI and MTI, they would be dividing the payment equally.  Id.  The Colorado Plaintiffs also expressly stated that the Counter-offer was their final offer, as they were "no longer willing to negotiate this matter any further."  Id.

Mellor responded by email dated August 21, 2015 to Plaintiffs' attorneys stating:

> Matheson Flight Extenders, Inc., and Matheson Trucking, Inc. agree to accept the terms of Option #1 of the Counter Offer proposed by Plaintiffs.  Specifically:
>
> Option # 1: Total Offer $7.3M[illion]
>
> $2.3 million up front as a down payment
>
> $5 million paid over 8 years in equal quarterly payments.

See Email from C. Mellor to J. Plaskov dated August 21, 2015, attached hereto as **Exhibit 3.**   After unequivocally accepting Plaintiffs' settlement demand, Mellor also told Plaintiffs that counsel would need to include ancillary terms into a mutually agreeable written settlement agreement.  Id.  He included March 1, 2016 as a reasonable time for performance of the initial payment of $2.3 million, given that Bankruptcy Court approval of the Settlement Agreement and incorporating the terms into and obtaining approval of a plan of reorganization

would be necessary.  As written, the plan provides for the First Distribution Date on April 1, 2016 (assuming the plan is confirmed in December 2015).  The Colorado Plaintiffs would naturally have been aware of that timing because they receive notice of all pleadings filed in this case. Id.

### F.    Post-Settlement Communications.

MFEI and MTI prepared a written settlement agreement and release that included the material terms of the Settlement Agreement as outlined in the Counter-offer and the ancillary terms, in keeping with Mr. Mellor's August 21 email.  That proposed settlement agreement and release were provided to Colorado Plaintiffs on September 4, 2015.  **Exhibit 4;** Lee Declaration. A true and correct copy of MFEI and MTI's proposed written settlement agreement and release (the "MFEI Proposed Settlement Agreement") is attached hereto as **Exhibit 5**; Lee Declaration.

The Colorado Plaintiffs' response to the MFEI Proposed Settlement Agreement was to attempt to reopen negotiations in order to extract further concessions from MFEI and MTI. **Exhibit 6;** Lee Declaration.  The Colorado Plaintiffs' counsel asserted that they had "offered to settle on terms that included payment of $2.3 million 'up front,' with no contingencies," and mischaracterized the ancillary terms identified in Mellor's email and included in the proposed written settlement agreement as "contingencies."  Id.  Colorado Plaintiffs' counsel then indicated that they were "working hard" on an alternative written agreement, but warned that it would be "very different from what you sent us, in material respects."  Id.  This would turn out to be an understatement of remarkable proportion.

The Colorado Plaintiffs transmitted their written settlement agreement and release on or about September 17, 2015 (the "CP Release").  A true and correct copy of the CP Release is attached hereto as **Exhibit 7**; Lee Declaration.   The CP Release includes a number of new terms that go well beyond the material terms offered by the Colorado Plaintiffs and accepted by MFEI and MTI.  For example, the CP Release included, for the first time, the following provisions in addition to other new provisions:

•   It added additional signatories to the release who were not parties to the underlying lawsuit and who are not judgment debtors (CP Release at p. 1).  Notably, the Colorado Plaintiffs named Mr. Mark Matheson initially in the lawsuit, but subsequently withdrew those claims.

• It sought a stipulation that Matheson is indebted to each Plaintiff in the amount of $2,679,957 (totaling $18,759,700), which for five of the Colorado Plaintiffs is more than the amounts set forth in their Proofs of Claim, and the execution of a "Confession of Entry of Amended Judgment" for that amount, which would be filed if the initial payment was not made (CP Release at § III.B).

• In violation of bankruptcy law which does not allow a debtor to prefer similarly situated creditors over one another or to make post-petition transfers out of the ordinary course of business, it also sought a security interest in MFEI and MTI's assets until the initial payment is made (CP Release at § III.C). Perhaps what is even more disturbing about this provision is that it raises serious ethical and fiduciary issues. The Colorado attorneys suggesting the CP Release are preferring their clients who did not settle prior to the MFEI bankruptcy filing to their clients who settled pre-petition, and the two Colorado Plaintiffs who are members of the Committee are preferring themselves to the very creditors whose interests they represent.

What has become clear is that the Colorado Plaintiffs are not satisfied with the agreement the parties reached and are, instead, using the inclusion of the ancillary terms in the Settlement Agreement to try to enter into a wholesale renegotiation of their terms of settlement. As argued below, the law simply does not permit the Colorado Plaintiffs' attempt to renegotiate the agreement.

### III.    LEGAL ARGUMENT
A.    **MFEI, MTI, and the Colorado Plaintiffs Agreed to the Material Terms of a Binding Settlement Agreement.**

Under Colorado law, a "settlement and compromise is a contract to end judicial proceedings, and accordingly, for it to be binding and enforceable, there must be a meeting of the minds as to its terms and conditions." Recreational Development Co. of America v. American Const. Co., 749 P.2d 1002, 1005 (Colo. App. 1987) (citations omitted). The essential terms of contract include: "parties, terms, subject-matter and consideration." Shull v. Sexton, 390 P.2d 313, 316-317 (Colo. 1964). A settlement agreement exists, and may be enforced so long as "the terms are sufficiently definite to allow a court to determine whether the parties have complied with them." DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248-1250 (Colo. App. 2001). "Settlement agreements comprised of a series of letters or other documents are valid." Citywide Bank of Denver v. Herman, 978 F. Supp. 966, 977 (D. Colo. 1997).

Even in circumstances where "a contract may be uncertain or incomplete in some respects, its specific performance may nevertheless be decreed where the uncertainty or incompleteness relates to matters which the law makes certain or complete by presumption, rule,

1    or custom and usage." <u>Shull</u>, 390 P.2d at 316-317.    Stated another way, the "general

2    doctrine…has been formulated by eminent judges, that an agreement framed in general terms

3    will be enforced where the law will supply the details…." <u>Id.</u>    Once the parties have agreed to

4    the material terms of such an agreement, mere "dissatisfaction with the terms of a compromise

5    agreement is not sufficient grounds to set it aside." <u>Recreational Development Co.</u>, 749 P.2d at

6    1005. Indeed, there is a strong policy favoring dispute resolution rather than continued litigation,

7    so if the terms of the settlement agreement are clear, unambiguous and capable of enforcement,

8    resolution of claims by settlement is preferred.    <u>Brackens v. Sedgwick Claims Mgmt. Servs.,</u>

9    <u>Inc.</u>, 2008 WL 906121, at *2-4 (D. Colo. Apr. 1, 2008).

10          There is no doubt that the parties agreed to the material terms of a binding Settlement

11    Agreement, terms with which this Court can easily determine compliance.    <u>Recreational</u>

12    <u>Development Co.</u>, 749 P.2d at 1005.    The Counter-offer plainly indicated that the Colorado

13    Plaintiffs would accept MFEI and MTI's agreement to provide payment on any of three different

14    sets of terms as full satisfaction of the Judgment, which was the basis on which they each

15    individually had filed a Proof of Claim in this bankruptcy case.    Mellor's plain and unconditional

16    acceptance on behalf of MFEI and MTI demonstrated that the parties had the requisite "meeting

17    of the minds" to form a binding settlement agreement on those essential terms of a contract

18    required by Colorado law – parties, terms, subject matter, and consideration. <u>See Shull</u>, 390 P.2d

19    at 316-317.    There is no doubt that the parties' mutual obligations on the terms proposed in the

20    Counter-offer provide more than adequate proof that there is consideration for an enforceable

21    Settlement Agreement:    MFEI and MTI committed to provide payment of the amount sought by

22    the Colorado Plaintiffs, on the schedule proposed by the Plaintiffs—the exact terms Plaintiffs

23    agreed to accept in full and final satisfaction of their judgment against MFEI and MTI.

24          Finally, the Counter-offer outlined the material terms of the Settlement Agreement in a

25    manner that is sufficiently clear to permit the Court to enforce those terms. <u>DiFrancesco</u>, 39

26    P.3d at 1248-1250 (A settlement agreement exists, and may be enforced so long as "the terms are

27    sufficiently definite to allow a court to determine whether the parties have complied with them").

28    Here, there is no doubt that these terms are "sufficiently definite" to allow a court to enforce

them because the material terms of the settlement themselves are straight-forward: MFEI and MTI will pay the Colorado Plaintiffs $7.3 million over the course of 8 years, as outlined in the Counter-offer; and the Colorado Plaintiffs will accept payment of that amount on that schedule as full and final satisfaction of their judgment against MFEI and MTI.

### B.    The Ancillary Terms Identified by MFEI and MTI Were Not Contingencies and Do Not Alter the Effectiveness of MFEI and MTI's Acceptance.

In an effort to avoid being bound by the terms of the Settlement Agreement they themselves created, the Colorado Plaintiffs have taken the position that Mellor's acceptance of August 21, 2015 was itself a counter-offer. **Exhibit 4**. This position, however, mischaracterizes the plain language of the acceptance, as well as Colorado law which recognizes that an agreement framed in general terms will be enforced where the law will supply the details. Shull, 390 P.2d at 316-317.

Contrary to the Colorado Plaintiffs' assertion, Mellor included in his acceptance his belief that the negotiation of ancillary terms and "a mutually agreeable written settlement agreement and waiver and release of all claims" would be necessary. **Exhibit 3**; Mellor Declaration. In other words, while MFEI's and MTI's acceptance of the material terms of the Counter-offer were absolute and unconditional, MFEI and MTI also recognized that the inclusion of certain ancillary terms would facilitate the parties' performance. "[T]he mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force." Shoels v. Klebold, 375 F.3d 1054, 1065 (10th Cir. 2004). For example, Mellor indicated that the settlement terms were subject to approval by the bankruptcy court. Far from being a condition precedent to MFEI or MTI accepting the Counter-offer, this ancillary provision simply recognized the fact that bankruptcy law requires bankruptcy court approval of the parties' settlement agreement.[2]

---

[2] The Colorado Plaintiffs apparently recognize that bankruptcy court approval of the settlement is required, because the CP Release also includes a provision for obtaining that approval. CP Release at § III.D.

Similarly, the need to obtain the approval of Wells Fargo Bank N.A. ("Wells Fargo") was not an additional term to which the Plaintiffs' agreement was required, but the recognition that MTI's pre-existing contract with Wells Fargo would require such a step.  Likewise, the ancillary provision that the Colorado Plaintiffs who are members of the Committee of Unsecured Creditors would resign on execution of the written settlement agreement was not a condition to acceptance, but the recognition of a necessary presumption on the effect of the settlement.  In fact, there does not appear to be any dispute about this issue.  Indeed, Ms. Thomas acknowledges that "the resolution will dramatically affect, if not eliminate my role." **Exhibit 8**.  Similarly, Mellor suggested that there be a limited stay while approval of the settlement was obtained, which, apparently, the Committee also agrees would be appropriate.  Id.

Finally, Mellor included March 1, 2016 as a reasonable time for performance of the settlement, given that Bankruptcy Court approval of the settlement and approval of a plan would be necessary. It is important to note that even the suggestion by Mellor that the initial payment called for by the settlement agreement be made on March 1, 2016 was not a condition to accepting the Colorado Plaintiffs' Counter-offer.  Rather, it was an attempt to clarify the timing of performance because the Settlement Agreement does not contain a deadline for performance. Mellor Declaration. But even this does not affect the binding nature of the Settlement Agreement.  Indeed, the law holds that "[i]n the absence of a specific time for performance in the contract, the law implies a reasonable time." Adams ex rel. Adams v. City of Westminster, 140 P.3d 8, 11 (Colo. App. 2005).

Accordingly, MFEI and MTI prepared a written settlement agreement and release that included the material terms of the Settlement Agreement as outlined in the Counter-offer and the ancillary terms in keeping with Mr. Mellor's August 21, 2015 email.  The Colorado Plaintiffs' response to the MFEI Proposed Settlement Agreement was to attempt to reopen negotiations in order to extract further concessions from MFEI and MTI.  The Colorado Plaintiffs' attorney asserted that they had "offered to settle on terms that included payment of $2.3 million 'up front,' with no contingencies," and mischaracterized the ancillary terms identified in Mr. Mellor's email and included in the proposed written settlement agreement as "contingencies."

**Exhibit 6**.  Colorado Plaintiffs' counsel then indicated that they were "working hard" on an alternative written agreement, but warned that it would be "very different from what you sent us, in material respects." Id.

In fact, rather than simply reciting the material terms of the parties' Settlement Agreement and including ancillary terms to clarify the parties' respective rights and obligations in the course of performance, the CP Release reflects an undisguised attempt to extract additional concessions from MFEI and MTI.  The CP Release includes a variety of new terms that go well beyond the material terms offered by the Colorado Plaintiffs, and accepted by MFEI and MTI, such as adding new parties as guarantors, the grant of post-petition security in favor of the Plaintiffs and, most disturbingly, a provision that the Debtor and Trucking are liable to each Plaintiffs for $2,679,957, *thereby increasing the agreed-upon liability from $7.3 million to an astonishing $18,759,700*. Notably, not one of these material terms had been included in the Colorado Plaintiffs' Counter-offer.

What has become exceedingly clear is that the Colorado Plaintiffs are using the inclusion of the ancillary terms in the Settlement Agreement to try to enter into a wholesale renegotiation of the very terms they proposed and have already agreed to. This position, too, is contrary to Colorado law. "Later dissatisfaction with the terms of a stipulated compromise agreement is not sufficient grounds to set it aside."  In re Marriage of Manzo, 659 P.2d 669, 672 (Colo. 1983). See Woods v. Denver Dep't of Revenue, Treasury Div., 45 F.3d 377, 378 (10th Cir. 1995) ("[A] party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind.").

C.    **The Settlement Agreement Can and Should Be Approved on the Terms Set Forth in the Counter-offer.**

MFEI asks this Court to approve their Settlement Agreement with the Colorado Plaintiffs in accordance with Fed. R. Bank. Proc. 9019.  While MFEI and MTI initially thought that the parties could negotiate ancillary terms as part of a written settlement agreement to facilitate each party's performance, they now realize that is not possible.  Thus, they request that this Court approve the settlement as embodied in the Counter-offer.  The Counter-offer included all of the

material terms necessary to create a binding settlement agreement between the Colorado Plaintiffs on one hand and MFEI and MTI on the other. MFEI and MTI accepted those terms unambiguously and without reservation. MFEI and MTI also ask this Court to impose a reasonable time of performance as of March 1, 2016, which will be incorporated into MFEI's and MTI's plan of reorganization. March 1, 2016 allows such time as is necessary conveniently for MTI and MFEI to do what bankruptcy law requires be done, which is the Debtor must obtain approval of the compromise followed by obtaining confirmation of a plan that requires MFEI and MTI to make the initial payment of $2,300,000.00 and provide adequate means for implementation of the plan. "Reasonable time is measured by the circumstances of the case…[and] may be such time as is necessary conveniently to do what the contract requires should be done." Shull, 390 P.2d at 316-317 (citations omitted).

MFEI believes approval of the Settlement Agreement is particularly appropriate given the strong policy considerations favoring voluntary resolution of disputes over continued litigation. See Yaekle v. Andrews, 169 P.3d 196, 200 (Colo. App. 2007), aff'd on other grounds, 195 P.3d 1101 (Colo. 2008) ("When considering alternative consequences, we will defer to results that encourage the settlement of disputes.").

>    D.    **The Settlement Agreement Should Be Approved**.

The bankruptcy court may approve a compromise or settlement agreement between an estate and another party pursuant to Fed. R. Bankr. P. 9019(a) which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

In the Ninth Circuit, a motion to approve a compromise is governed by application of the standards set forth in the case of In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986), cert. denied, Martin v. Kane, 479 U.S. 854 (1986). Those standards require a review of four factors: 1) the likelihood of success on the merits of the underlying litigation with due consideration for uncertainty in the facts and law; 2) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; 3) the difficulties if any to be encountered in

collection; and 4) the paramount interest of creditors and proper deference to their reasonable views in the premises.  784 F.2d at 1381.

The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable and adequate.  In re Woodson, 839 F.2d 610 (9th Cir. 1988).  The Court need not conduct an exhaustive investigation into the claim sought to be compromised.  In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982).  In undertaking an examination of the settlement, the responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness".  In re W.T. Grant Company, 699 F.2d 599, 608 (2nd Cir. 1983), citing, Newman v. Stein, 464 F.2d 689, 693 (2nd Cir. 1972), cert. denied sub nom. Benson v. Newman, 409 U.S. 1039 (1972).  The court must reach "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "form an educated estimate of the complexity, expense, and likely duration of such litigation .... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425 (1968).  Though the Court should give deference to the reasonable views of creditors, "objections do not rule.  It is well established that compromises are favored in bankruptcy."  In re Lee Way Holding Co., 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

The law favors compromise and not litigation for its own sake, and so long as the bankruptcy court has amply considered the various factors, the decision to approve a compromise must be affirmed.  The Debtor as the party proposing the compromise has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved.  A & C Properties, 784 F.2d at 1381.  Here, MFEI believes that the Settlement Agreement meets the test of A & C Properties and should be approved as fair and equitable. Each of the tests is analyzed in detail below.

**1. The likelihood of success on the merits of the underlying litigation with due consideration for uncertainty in the facts and law.**

The Judgment in the Colorado Litigation addressed claims for discrimination, retaliation and a hostile work environment.  Although the seven Colorado Plaintiffs obtained judgments in slightly varying amounts, each of them were comprised of separate categories: (1) back pay, (2) compensatory damages, and (3) punitive damages.[3]  The cumulative award total is $15,280,012 of which $14,000,000 represents punitive damages.

Defendants have filed three post-trial motions: (1) a Motion for Remittitur; (2) a Motion for New Trial; and (3) a Renewed Motion for Judgment as a Matter of Law, which raise the following legal issues:

### i.    Motion For Remittitur

Punitive damages make up $14,000,000 (or approximately <u>93.5 percent</u>) of the total $14,968,100 damage award. Defendant's Motion for Remittitur asks the Court to dismiss the verdict or reduce the damages awarded to comply with Constitutional Due Process principles.

Where, as here, there is a substantial award of compensatory damages, courts in the Tenth Circuit have reduced punitive damage awards so as not to exceed one-to-two times the amount of compensatory damages awarded. <u>See Perkins v. Federal Fruit & Produce Co., Inc.</u>, 2013 WL 2112425, at *4 (D. Colo. May 14, 2013) (finding that punitive damages awards in an amount 6.5 times the compensatory damages awarded were unreasonable, and ordering remittitur of punitive damages in excess of twice the amount of compensatory damages); <u>Jones v. United Parcel Serv., Inc.</u>, 674 F.3d 1187, 1207 (10th Cir. 2012) (reducing punitive damages from a slightly over 3:1 punitive-to-actual damages ratio to a 1:1 ratio). Moreover, the Supreme Court has held that few awards exceeding a single-digit ratio between punitive and compensatory awards will be Constitutional. <u>See State Farm Mut. Auto. Ins. v. Campbell,</u> 538 U.S. 408, 425 (2003).

The punitive damages awarded to the Colorado Plaintiffs plainly exceed what Tenth Circuit courts have found permissible. The punitive-to-compensatory damage ratios for six of the seven Colorado Plaintiffs also exceed the single-digit ratios which the Supreme Court has

---

[3] The Colorado Plaintiffs also seek prejudgment interest and reasonable attorneys' fees and costs, and four of the Colorado Plaintiffs seek an award of front pay.

indicated are constitutionally permissible. Conversely here, the amount to which the parties agreed in the Settlement Agreement would result in a punitive-to-compensatory damage ratio that is greater than the 2:1 – 1:1 ratios held proper under recent Tenth Circuit case law,[4] *and thus may be more favorable to the Colorado Plaintiffs than the judgment if modified by the District Court or Tenth Circuit Court of Appeals.*

In particular, the punitive-to-compensatory damage ratio under the Settlement Agreement would be in the range of 4.71:1. Any portion of the $7.3 million that is attributed to attorneys' fees should not be considered in the ratio. Assuming that $1.725 million[5] of the $7.3 million settlement would be considered reasonable attorneys' fees and costs (an issue on which the Debtor does not take any position, particularly given that the attorneys are not claimants of this estate), the following chart reflects the ratio of the punitive damages to compensatory and economic damages under the original jury award and the $7.3 Million Settlement Agreement:

| Award/ Scenario | Total Econ. & Comp. Damage Award | Punitive Damage Award | Total Damage Award | Reasonable Attorneys' Fees and Costs | Ratio of Comp. & Econ. to Punitive Damages |
|---|---|---|---|---|---|
| **Original Jury Award** | $ 968,100 | $14,000,000 | $14,968,100 | n/a | 14.5:1 |
| **$7.3M settlement, with $1,725,000 attributed to reasonable attorneys' fees and costs** | $ 968,100 | $ 4,606,900 | $ 5,575,000 | $ 1,725,000 | 4.75:1 |

     ii.    **Motion for New Trial**

Defendants filed a Motion for New Trial under Fed. R. Civ. P. 59(a). A Court may grant

---

[4] The ratio is within the range that the Supreme Court has indicated may be considered constitutionally proper. State Farm, 538 U.S. at 425.

[5] This figure reflects the Colorado Plaintiffs' adjusted lodestar amount for attorneys' fees and costs, and is adjusted upward to reflect additional work Colorado Plaintiffs' counsel may have performed in the previous two months.

a new trial where an error at trial "substantially, and adversely, affects the rights of a party." Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998). A motion for new trial "neither requires nor even envisions that the Court view the evidence [in favor of the nonmoving party]." Henning v. Union Pac. R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008). Accordingly, unlike a Fed. R. Civ. P. 50 motion, a district court judge may set aside the verdict pursuant to Fed. R. Civ. P. 59(a) even though there may be substantial evidence to support it. "In contrast to the narrow standard governing renewed motions for judgment as a matter of law, the trial court's authority to grant a new trial 'is large.'" Voda v. Medtronic Inc., 899 F. Supp. 2d 1188, 1193 (W.D. Okla. 2012) (internal quotation omitted), aff'd 541 F. App'x 1003 (Fed. Cir. 2013).

Defendants' Motion for New Trial is based on trial court decisions that precluded Defendants from presenting highly relevant evidence and arguments to the jury. This lawsuit was driven by former employees, Plaintiff Bemba Diallo and Cresencio Sanchez. Both aggressively recruited co-workers to join the lawsuit, even advising them to lie, and threatened and intimidated those employees who did not follow their directives to join the lawsuit. The Court's exclusion of relevant evidence related to these former employees and the pressure tactics they imposed upon their coworkers to join the lawsuit falsely cleansed and thereby distorted the narrative about the work environment these Plaintiffs created in favor of Plaintiffs, and prejudiced Defendants from presenting their full defense.

Defendants further assert in their Motion for New Trial that the Court erred by: (1) submitting an incorrect hostile work environment jury instruction, over Defendants' objections; (2) granting a *sua sponte* motion to exclude Defendants' mitigation of damages affirmative defense pursuant to Fed. R. Civ. P. 50, notwithstanding the record evidence supporting the defense; (3) excluding Defendants' rebuttal expert Lisa Meer's testimony about multiple regression analysis; and (4) not bifurcating the issue of punitive damages.

### iii.    Renewed Motion for Judgment as a Matter of Law

Defendants filed a Renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50, which requires the court to enter judgment as a matter of law when the facts, as construed in favor of the non-moving party, permit only one rational conclusion. "The question

is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party." <u>Hererra v. Lufkin Indus., Inc.</u>, 474 F.3d 675, 685 (10th Cir. 2007) (internal quotation omitted).

Defendant's Renewed Motion for Judgment as a Matter of Law points to the deficient evidence supporting the following claims: (1) Mahamet Camara's and Ernie Duke's hostile work environment claims; (2) Macire Diarra's, Andre De Oliveira's, and Duke's disparate treatment claims based on the shift bids; (3) Diarra's and Duke's discharge claims; and (3) Camara's, De Oliveira's, Diarra's, and Dean Patricelli's retaliation claims.

Thus, the Debtor and Trucking assert that they have a reasonable probably of success on their post-trial motions and, if necessary, on appeal. However, the Colorado Plaintiffs dispute all of these legal arguments, thus establishing that there is risk on both sides.

### 2. **The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it**

The Judgment arose from a two-week jury trial, suggesting factual complexity and depth. The post-trial litigation and appeal will be expensive. The Debtor and Trucking anticipate that an appeal to the Tenth Circuit could take one-to two-years to be fully resolved. If the Debtor and Trucking prevail so that a new trial is ordered, the ultimate final resolution of the litigation would be well in excess of two years. On balance, this prong of the test weighs heavily in favor of approving the Settlement Agreement.

### 3. **The difficulties if any to be encountered in collection**

This prong of the test is neutral to the analysis because the Debtor is not collecting a judgment. It does factor into the analysis on behalf of the Plaintiffs because, if they were ultimately able to prevail, collection of the judgment would put the Debtor and Trucking out of business. As set forth in the Debtor's Liquidation Analysis, unsecured creditors receive nothing unless these entities continue to operate.

### 4. **The paramount interest of creditors and proper deference to their reasonable views**

The fourth and final factor for the Court to consider in ruling on a motion to compromise is the interests of creditors. This factor weighs strongly in favor of approving the Settlement

Agreement. The Colorado Plaintiffs are the creditors that forced the Debtor into bankruptcy. The Debtor was effectively paying its debts as they came due as to all other non-litigation related creditors before the judgment was entered.  The Settlement Agreement resolves all issues with the Plaintiffs and eliminates the cost of proceeding before the Colorado Court on the post-trial motions as well as the uncertainty as to how the District Court would rule on those motions. Moreover, litigation always entails the prospect of appeal, thereby adding at least one additional layer of cost, time and risk.  The Settlement Agreement resolves the Plaintiffs' Proofs of Claims and pays them in accordance with the terms the Plaintiffs themselves offered, thus rendering their treatment under an amended plan as being entirely unimpaired.  It also provides the Debtor the opportunity to remain in business and pay the claims of other unsecured creditors, since there can be no legitimate dispute that unsecured creditors receive nothing if the Debtor and Trucking are forced to liquidate.

Thus, the Settlement Agreement allows the Debtor and Trucking to resolve the litigation with the Plaintiffs, eliminate the cost of such litigation, and to pay **all** creditors a fair amount while avoiding the risks inherent in litigation and minimizing the costs to the estate.  These considerations urge the propriety of the Settlement Agreement.

## IV.    CONCLUSION

On these grounds, MFEI and MTI request that this Court approve their Settlement Agreement and impose a reasonable time of performance as of March 1, 2016 to make the $2.3 million initial payment, which will be incorporated into MFEI's and MTI's amended plan of reorganization.

DATED this 29th day of September, 2015.

LEE & HIGH, LTD.

/s/ Cecilia Lee, Esq.
CECILIA LEE, ESQ.
ELIZABETH HIGH, ESQ.

DATED this 29th day of September, 2015.

HARTMAN & HARTMAN, LTD.

/s/ Jeffrey L. Hartman, Esq.
JEFFREY L. HARTMAN, ESQ.

# EXHIBIT 1

**From:** Justin Plaskov [mailto:jplaskov@lohfshaiman.com]
**Sent:** Wednesday, August 19, 2015 2:27 PM
**To:** Charles Mellor
**Cc:** Stacey Campbell; Daniel Combs; lynn feiger lynnfeiger@gmail.com; 'Brian Moore'; Laura Johnson; CTostado@jgllp.com
**Subject:** FW: Matheson Trucking et al. Counter Offer

Attached is our clients' response.

Thanks,
Justin

Justin M. Plaskov
Associate
Lohf Shaiman Jacobs Hyman & Feiger PC
950 S. Cherry Street, Suite 900
Denver, Colorado  80246-2666
Telephone:  303-753-9000 (ext. 242)
Facsimile:  303-753-9997

CONFIDENTIAL NOTICE:  The information contained in this message and any attached files may be confidential and/or protected by the attorney-client privilege.  If you receive this message in error, please immediately reply to the sender and delete the message and its attachments.

CIRCULAR 230 TAX DISCLAIMER:  If this message or any attachments include or could be interpreted to include any tax advice, unless expressly stated, the sender does not intend such advice to be used, and cannot be used by any recipient or any other taxpayer to (a) avoid federal tax penalties or (b) promote, market or recommend to any person a partnership, other entity, investment plan or other transaction described in this message or any attachments.

Please visit our website at www.lohfshaiman.com


**From:** Andre DeOliveira [mailto:andrekukiwon@hotmail.com]
**Sent:** Wednesday, August 19, 2015 10:01 AM
**To:** Brian Moore <bmoore@jgllp.com>; membe2003@yahoo.com; diallo190@gmail.com; diallobemba2001@yahoo.com; massyeye@yahoo.com; dukepas2@msn.com; deanpatricelli@yahoo.com; CTostado@jgllp.com
**Cc:** lynn feiger lynnfeiger@gmail.com <lynnfeiger@gmail.com>; Justin Plaskov <jplaskov@lohfshaiman.com>; Laura Johnson <ljohnson@lohfshaiman.com>
**Subject:** Matheson Trucking et al. Counter Offer

Please find attached a letter regarding the above case.  Please let us know if you have any questions.

---

Go Green - Think before you print. Protect the earth and our resources.

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL, intended for the sole use of the addressee(s), and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please destroy and notify the sender immediately.

# EXHIBIT 2

Dear Attorneys:


On Saturday, August 15, 2015, all 7 of the named clients, Mahamet, Andre, Bemba, Dean, Salif, Macire and Ernie sat down and came up with 3 counter offers.   We have decided that we want to continue to settle this as a group instead of individually. The amount awarded is to be divided equally among all 7 clients. Additionally, we ask that you please send us a copy of the proposed counter offer made to Matheson by email to each of us.  We do not wish to have another meeting until such time Matheson has made us an offer.  Please note that the below counter offers are our final offers.  We are no longer willing to negotiate this matter any further.

Here are the 3 plans that we came up with as counter offers:


### 1st Counter Offer

Total Counter Offer:  $7.3 Million
$2.3 million up front as a down payment
$5 million paid over 8 years in equal quarterly payments


### 2nd Counter Offer

Total Counter Offer:  $7 Million
$2.3 Million up front as down payment
$4.7 Million paid over 6 years in equal quarterly payments


### 3rd Counter Offer

Total Counter Offer:  $6.3 Million
$2.3 Million up front as a down payment
$4 Million paid over 5 years in equal quarterly payments


Thank you.

# EXHIBIT 3

**From:** Charles Mellor
**Sent:** Friday, August 21, 2015 2:11 PM
**To:** 'Justin Plaskov'; lynn feiger lynnfeiger@gmail.com
**Cc:** Stacey Campbell; Daniel Combs; 'Brian Moore'
**Subject:** RE: Matheson Trucking et al. Counter Offer

Lynn & Justin,
Thank you for communicating the counter offers. Our response is below.

## Response to Plaintiffs Counter Offer

**Matheson Flight Extenders, Inc., and Matheson Trucking, Inc. agree to accept the terms of Option #1 of the Counter Offer proposed by Plaintiffs. Specifically:**

Option #1: Total Offer $7.3M
$2.3 million up front as a down payment
$5 million paid over 8 years in equal quarterly payments

**To finalize the settlement, we will need counsel to further negotiate ancillary terms on behalf of all parties that will be included in a mutually agreeable written settlement agreement and wavier and release of all claims:**

**Initial Terms:**
-Settlement terms are subject to approval by BK court and Wells Fargo bank.
-Initial payment March 1, 2016. Quarterly payments to follow thereafter.
-Other Chapter 11 Plan terms to remain the same.
-Creditor's Committee will agree to a stay of BK proceedings.
-Plaintiffs will resign as members of the CC to be effective upon signing settlement agreement.

Should you have any questions, please do not hesitate to contact Stacey Campbell or I.

Regards,
Chuck Mellor

*Charles J. Mellor*
Chief Operating Officer,
General Counsel
*Matheson, Inc.*
9785 Goethe Road
Sacramento, CA 95827
Direct            (916) 504-4758
Facsimile        (916) 504-4858
Toll Free        (800) 455-7678 ext. 758
CMellor@mathesoninc.com

**From:** Justin Plaskov [mailto:jplaskov@lohfshaiman.com]
**Sent:** Wednesday, August 19, 2015 2:27 PM
**To:** Charles Mellor
**Cc:** Stacey Campbell; Daniel Combs; lynn feiger lynnfeiger@gmail.com; 'Brian Moore'; Laura Johnson;
CTostado@jgllp.com
**Subject:** FW: Matheson Trucking et al. Counter Offer

Attached is our clients' response.

Thanks,
Justin

Justin M. Plaskov
Associate
Lohf Shaiman Jacobs Hyman & Feiger PC
950 S. Cherry Street, Suite 900
Denver, Colorado  80246-2666
Telephone:  303-753-9000 (ext. 242)
Facsimile:  303-753-9997

CONFIDENTIAL NOTICE:  The information contained in this message and any attached files may be confidential
and/or protected by the attorney-client privilege.  If you receive this message in error, please immediately reply to the
sender and delete the message and its attachments.

CIRCULAR 230 TAX DISCLAIMER:  If this message or any attachments include or could be interpreted to include
any tax advice, unless expressly stated, the sender does not intend such advice to be used, and cannot be used by
any recipient or any other taxpayer to (a) avoid federal tax penalties or (b) promote, market or recommend to any
person a partnership, other entity, investment plan or other transaction described in this message or any
attachments.

Please visit our website at www.lohfshaiman.com

**From:** Andre DeOliveira [mailto:andrekukiwon@hotmail.com]
**Sent:** Wednesday, August 19, 2015 10:01 AM
**To:** Brian Moore <bmoore@jgllp.com>; membe2003@yahoo.com; diallo190@gmail.com;
diallobemba2001@yahoo.com; massyeye@yahoo.com; dukepas2@msn.com;
deanpatricelli@yahoo.com; CTostado@jgllp.com
**Cc:** lynn feiger lynnfeiger@gmail.com <lynnfeiger@gmail.com>; Justin Plaskov

<jplaskov@lohfshaiman.com>; Laura Johnson <ljohnson@lohfshaiman.com>
**Subject:** Matheson Trucking et al. Counter Offer

Please find attached a letter regarding the above case.  Please let us know if you have any questions.

---

Go Green - Think before you print. Protect the earth and our resources.

---

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL, intended for the sole use of the addressee(s), and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please destroy and notify the sender immediately.

# EXHIBIT 4

**From:** Stacey Campbell
**Sent:** Friday, September 4, 2015 4:38 PM
**To:** bmoore@jgllp.com; lynn feiger lynnfeiger@gmail.com <lynnfeiger@gmail.com>; 'Justin Plaskov'
<jplaskov@lohfshaiman.com>
**Cc:** Dan Combs (daniel@campbell-litigation.com) <daniel@campbell-litigation.com>
**Subject:** Camara, et. al. & Matheson, et. al. Settlement Agreement

Brian, Lynn, and Justin

Attached for your review is the draft settlement agreement (written for Dean Patricelli)
documenting the settlement between the parties. The Defendants will enter into a separate
settlement agreement similar to Mr. Patricelli's agreement, with each of the current
Plaintiffs. Please review and let me know if you have any modifications to the settlement
agreement language by Friday, September 11, 2015.

Justin,

With respect to Mr. Kaba's interest in negotiating and/or assigning his settlement and in
response to your email message earlier today, I recommend that you read the settlement
agreement that Mr. Kaba entered into when he settled his claims.

Thanks,

Stacey Campbell
730 17th St. Ste. 740
Denver, Colorado 80202
DD: 303. 872.7258/ P: 303.536.1833 / M: 303.517.5037
stacey@campbell-litigation.com



CAMPBELL
LITIGATION, P.C.

DEFENDING CLIENT INTERESTS

CONFIDENTIALITY NOTICE:
DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication
contains confidential and/or privileged information intended only for the addressees. If you have received this communication in
error, please call us (collect) immediately at (303) 536-1833 and ask to speak to Pat Bissonnette. Also please e-mail the sender
and notify the sender immediately that you have received the communication in error.

# EXHIBIT 5

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement And Release Of All Claims, which is effective as of the date of execution by all parties, is between Dean Patricelli ("Plaintiff"), Matheson Trucking, Inc., and Matheson Flight Extenders, Inc. (the "Debtor" and together with Matheson Trucking, Inc., the two collectively referred to as "the Matheson Defendants").

I.
## RECITALS

**A.**    Plaintiff previously was employed by Matheson Flight Extenders, Inc.

**B.**    Plaintiff initiated and participated in a lawsuit against Matheson Flight Extenders, Inc. and Matheson Trucking Inc. in the United States District Court for the District of Colorado styled *Camara, et al. v. Matheson Flight Extenders, et al.,* Case No. 12-cv-03040-CMA-CBS ("the Lawsuit").

**C.**    In a jury trial, Plaintiff prevailed and the Court entered a verdict in the amount of $2,274,800 in favor of Plaintiff, of which $274,800 represents compensatory damages and of which $2,000,000 represents punitive damages (the "judgment").

**D.**    The parties wish to resolve all claims asserted by Plaintiff in the Lawsuit and all other disputes and potential disputes with MATHESON (known and unknown).

**E.**    Should Plaintiff sign this Agreement, Plaintiff will be provided with consideration as set forth in this Agreement.

**F.**    On April 19, 2015, Defendant Matheson Flight Extenders, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, Case No. 15-50541-btb (Bankr. D. Nev.) (the "Bankruptcy Case").

**G.**    On May 20, 2015, a committee of unsecured creditors (the "Committee") was appointed in the Bankruptcy Case. Plaintiff is a member of the Committee.

**H.**    The Debtor and Matheson Trucking have jointly proposed a chapter 11 plan of reorganization in the Bankruptcy Case (as such will be amended, including amendments to reflect the terms of the Settlement Agreement, the "Plan"). The Debtor and Matheson Trucking are seeking the entry of an order confirming the Plan (the "Confirmation Order").

**I.**    The parties have filed post-trial motions in the Lawsuit and, if Defendants are not successful on the post-trial motions, Defendants intend to appeal the case to the Tenth Circuit Court of Appeals.

**J.**    Plaintiff has filed a Proof of Claim for $2,679,957.14 as Claim No. 20 on August 4, 2015 in the Bankruptcy Case based on the judgment, which included among other things, the amount of the judgment, interest, costs, back pay and attorneys' fees (the "Proof of Claim").

Plaintiff's Initials _____

**K.**     This Agreement sets forth the entire understanding between Plaintiff and the Matheson Defendants concerning Plaintiff's Proof of Claim, Plaintiff's application for employment with and employment by Matheson Flight Extenders, Inc. and Plaintiff's disputes with the Matheson Defendants, known or unknown.

## II.
## DEFINITIONS

The following definitions shall be applicable for the purposes of this Agreement:

**A.**     "Agreement" means this Settlement Agreement and Release of All Claims.

**B.**     "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; the right to an equitable remedy for the breach of performance if such breach gives rise to a right for payment , whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed or undisputed, secured or unsecured; any debt, obligation, demand, cause of action, claim for relief, judgment, controversy or claim of any kind whatsoever between Plaintiff and MATHESON, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, retaliation, claim for attorneys' fees or costs, or any other legal theory; including claims under Title VII of the Civil Rights Act of 1964, as amended; claims under the Civil Rights Act of 1991; claims under 42 U.S.C. § 1981, § 1981a, § 1983, § 1985, or § 1988; claims under the Americans with Disabilities Act of 1990, as amended; claims under the Rehabilitation Act of 1973, as amended; claims under the Fair Labor Standards Act of 1938, as amended; claims under the Employee Retirement Income Security Act of 1974, as amended; claims under the Family and Medical Leave Act of 1993, as amended; claims under the Sarbanes-Oxley Act, as amended; claims under the Genetic Information Nondiscrimination Act of 2008; claims under the Worker Adjustment and Retraining Notification Act; claims under the Colorado Anti-Discrimination Act; claims under the Colorado Wage Claim Act; and claims under any other applicable federal, state or local statute, regulation, ordinance or common law principle, excluding, however, claims that cannot be released by private agreement as a matter of law.

**C.**     The "Effective Date" of this Agreement shall be the first business date after which all of the following events has occurred: (a) the Agreement has been duly executed and delivered by each of the Parties; (b) the Bankruptcy Court has entered a Final Order (defined below) approving the Agreement in its entirety pursuant to Fed. R. Bankruptcy Pro. 9019 and, to the extent required or necessary, Wells Fargo Bank has approved; and (c) the Bankruptcy Court has entered the Confirmation Order on the Plan. .

**D.**     "Final Order", as used herein, means 14 days after entry of an order approving the terms of this Agreement pursuant to Fed. R. Bankr. Proc. 9019 (the "Rule 9019 Order") or 14 days after entry of the entry of the Confirmation Order if no appeal is

taken from said orders. The parties agree to use best efforts to obtain expedited approval of this Agreement from the Bankruptcy Court.

**E.**    "Confirmation Order" means the entry of a Final Order approving the Plan.

**F.**    "MATHESON" means Matheson Flight Extenders, Inc., Matheson Trucking, Inc., Matheson Postal, Matheson, Inc., and any predecessor or current or former parent, subsidiary or affiliated company, or successor of any of them, or benefit plan maintained by any of them, and the current and former owners, directors, officers, employees, shareholders and agents of any or all of them, including but not limited to Mark Matheson in both his personal and representative capacity.

**G.**    "Plaintiff" means Dean Patricelli.

**H.**    "The Lawsuit" means the civil action filed by Plaintiff and others in the United States District Court for the District of Colorado styled *Camara, et al. v. Matheson Flight Extenders, et al.,* Case No. 12-cv-03040-CMA-CBS and any appeals and appellate remedies therefrom.

**I.**    "The Matheson Defendants" means Matheson Trucking, Inc. and Matheson Flight Extenders, Inc.

**J.**    The "Debtor" means Matheson Flight Extenders, Inc., a debtor in the Bankruptcy Case pending in the United States Bankruptcy Court for the District of Nevada as Case No. BK-N-15-50541-btb (Bankr. D. Nev.).

III.
## COVENANTS

A.    <u>**Consideration To Plaintiff.**</u>

The Debtor will file in the Bankruptcy Court the necessary papers to obtain the Rule 9019 Order, and will further take the necessary steps to obtain approval of a disclosure statement and confirmation of the Plan, the terms and conditions of which are incorporated herein.    The Debtor will include in the Plan the approval of this Agreement, including the treatment of Plaintiff's Proof of Claim to be paid as follows: As consideration for entering this Agreement, the Matheson Defendants will pay Plaintiff the gross amount of $1,042,857.14 to be paid as set forth in section III.B of this Agreement.  In addition, Plaintiff and Matheson Defendants agree to structure the non-monetary terms of the settlement as set forth in section III.C of this Agreement.

Plaintiff agrees that the total consideration offered in this Agreement includes amounts in addition to anything of value to which Plaintiff is already entitled.

Plaintiff consents to this consideration and agrees to take steps necessary to facilitate the entry of the Rule 9019 Order and the Confirmation Order by doing such things as voting in favor of the Debtor's plan of reorganization, directing the Committee to agree to stay the Bankruptcy Case pending the entry of the Rule 9019 Order, and thereafter resigning as a member of the Committee upon execution of this Agreement.

**B.    Payment Structure.**

In full satisfaction of Plaintiff's Proof of Claim and the judgment,  the Plan will provide that the consideration set forth in section III.A of this Agreement shall be paid to Plaintiff as follows: the sum of $328,571.43 will be paid to Plaintiff no later than March 1, 2016 as follows: 1) $ _____ , less applicable withholding pursuant to an IRS Form W-2; 2) $_____ will be payable to Plaintiff pursuant to IRS Form 1099, representing alleged emotional distress damages; 3) $_____ will be payable to Plaintiff's counsel pursuant to IRS Form 1099, representing Plaintiff's attorneys' fees and costs. Beginning on the first Distribution Date following the March 1, 2016 payment, equal quarterly payments of $22,321.43 will be paid to Plaintiff over eight years as follows: 1) $ _____, less applicable withholding pursuant to an IRS Form W-2; 2) $_____ will be payable to Plaintiff pursuant to IRS Form 1099, representing alleged emotional distress damages; 3) $_____ will be payable to Plaintiff's counsel pursuant to IRS Form 1099, representing Plaintiff's attorneys' fees and costs. These amounts are in full satisfaction of any and all amounts set forth in the Proof of Claim and any and all rights, claims and amounts set forth in the judgment.

The Matheson Defendants offer no tax advice and make no representations about the taxability of the proceeds or Plaintiff's obligation to pay taxes on them. Plaintiff agrees to pay any and all taxes that might be due on the money being paid to him, if any, and further agrees that the Matheson Defendants are not and shall not be liable for any portion of any such taxes for which Plaintiff is responsible.  Plaintiff agrees to indemnify the Matheson Defendants for any and all penalties, fees, expenses, and attorneys' fees incurred by the Matheson Defendants in connection with litigation or administrative action pertaining to Plaintiff's failure to remit the proper taxes.

**C.    Settlement Structure of Non-monetary Terms.**

As consideration for entering into this Agreement, Plaintiff and Defendants agree to structure the settlement as follows:

1.    Matheson Flight Extenders will seek approval of the settlement on shortened time in the Bankruptcy Case from the Bankruptcy Court and the necessary or required approval of Wells Fargo Bank.  The Matheson Defendants' execution of this Agreement is conditioned on the Bankruptcy Court's entry of an order in the Bankruptcy Case approving this Agreement pursuant to Fed. R. Bankr. Pro. 9019, approval as necessary and required from Wells Fargo Bank, and the entry of Confirmation Order confirming the Plan which will incorporate and fully implement the terms of this Agreement.;

2.    Upon execution of this Agreement, Plaintiff will direct the Committee to stay any further action in the Bankruptcy Case pending entry of the Rule 9019 Order.

3.    Upon entry of the Rule 9019 Order, Plaintiff will immediately resign from the Committee.

4.    This Agreement and the payments due to Plaintiff will be incorporated into

Plaintiff's Initials _____                        4

the Plan and are specifically conditioned on entry of the Confirmation Order in the Bankruptcy Case and occurrence of the Effective Date as defined in the Plan.

5.    Plaintiff agrees to execute any and all documents necessary to vacate the jury verdict upon payment of the March 1, 2016 payment.

6.    Upon entry of the Rule 9019 Order, Plaintiff must immediately provide a joint press release stating that the parties have amicably resolved their differences related to Plaintiff's employment and the jury trial verdict and have agreed to vacate the jury verdict related to Plaintiff's claims in the Lawsuit.

7.    Upon entry of the Rule 9019 Order, Plaintiff must immediately sign a joint confidential letter to the United States Postal Service ("USPS") explaining:

   a.    that the parties have settled their differences,
   b.    that the parties agreed to vacate the jury verdict related to their claims;
   c.    that former Plaintiff De Oliveira still works for Matheson Flight Extenders, and
   d.    that Plaintiff encourages USPS to continue to do business with Defendants, given the resolution and the fact that Plaintiff De Oliveira remains employed by Matheson Flight Extenders.

**D.    Dismissal Of Plaintiff's Claims In The Lawsuit.**
Upon the March 1, 2016 payment, the parties will execute such documents necessary to vacate the judgment in its entirety and to dismiss the Lawsuit in its entirety, subject to revival of the judgment in its original amount and components in the event there is a monetary default in payment of the remaining consideration owed pursuant to Section IIIB above.

**E.    Release Applies To Representative Actions.**
The releases above apply to any Claims brought by any person or agency on behalf of Plaintiff or any class or representative action pursuant to which Plaintiff may have any right or benefit.  Plaintiff promises not to accept any recoveries or benefits which may be obtained on Plaintiff's behalf by any other person or agency or in any class or representative action that may include or encompass any of the released Claims, and Plaintiff assigns any such recovery or benefit to the Matheson Defendants. Plaintiff agrees not to initiate, participate in, or in any way contribute to any private civil action involving the released Claims.

**F.    Rights Retained And Rights Waived.**
Plaintiff represents, as a material term of this Agreement, that, other than the Lawsuit, there are no charges or disputes pending before any governmental agency or other forum for which approval by the agency or forum is required for dismissal. The parties agree that nothing in this Agreement is intended to prevent, impede, or interfere with Plaintiff: (1) filing a timely charge or complaint with, or participating fully and

Plaintiff's Initials _____                5

honestly in any investigation or proceeding conducted by, the Equal Employment Opportunity Commission ("EEOC"), National Labor Relations Board ("NLRB"), the Occupational Safety and Health Administration ("OSHA"), or any other federal, state or local agency charged with the enforcement of any laws; (2) exercising rights under Section 7 of the National Labor Relations Act to engage in joint activity with other employees; (3) engaging in any future activities protected under the whistleblower statutes administered by OSHA; or (4) filing a future claim related to an exposure, or an occupational injury, or an occupational illness, whose existence was unknown, or reasonably could not have been known, to Plaintiff on the date Plaintiff signs this Agreement. However, if the EEOC, NLRB, or any other state, federal or local government agency commences an investigation or other legal proceeding on Plaintiff's behalf, Plaintiff specifically waives and releases the right, if any, to recover any monetary or other individual relief of any sort whatsoever arising from any such investigation or legal proceeding, except for any individual relief that cannot be waived as a matter of law. Plaintiff does not release any claims for workers' compensation benefits, unemployment compensation, claims for vested pension benefits, or any other claims or rights that cannot be released by private agreement as a matter of law.

**G.**  **No Disparagement.**
Plaintiff agrees not to disparage MATHESON or any of its employees, products, abilities, or services. The Matheson Defendants agree that supervisory and management employees of MATHESON will not disparage Plaintiff, his work performance, his values, or his philosophies.

**H.**  **Agreement Not To Seek Reemployment.**
Plaintiff agrees never to seek direct or indirect employment or consulting or contradicting employment with MATHESON at any time after Plaintiff's execution of this Agreement. If the above provision is breached by Plaintiff, Plaintiff's application will be rejected without any resulting liability for MATHESON. In the event Plaintiff is employed as an employee, consultant, independent contractor, or otherwise, in contravention of the terms of this section, Plaintiff shall be subject to summary dismissal or discharge without any resulting liability for MATHESON. This provision shall not apply in the event Plaintiff is working for an entity that is acquired by the Matheson Defendants subsequent to the Matheson Defendants' execution of this Agreement. Although Plaintiff and the Matheson Defendants agree that Plaintiff is not eligible for rehire with MATHESON, Plaintiff may represent that Plaintiff is eligible for rehire for purposes of gaining other employment. The Matheson Defendants will make no representations to prospective employers regarding Plaintiff's status except as set forth in section III.K, below.

**I.**  **Neutral Reference.**
Should a prospective employer of Plaintiff need to verify Plaintiff's employment with Matheson Flight Extenders, Inc., the prospective employer will be directed by Plaintiff to speak with the Human Resources Department by calling _____ who will confirm Plaintiff's dates of employment and job titles, but will provide no other information.

Plaintiff's Initials _____                6

J.    **Litigation to Enforce Agreement**.

In the event of any litigation between the parties or their successors to enforce this Agreement, or otherwise arising out of it, the prevailing party shall be entitled to an award against the other of all legal fees and costs he or it reasonably incurs in connection there with.

### IV.
### ADDITIONAL PROVISIONS

A.    **Severability**.

In case any one or more of the provisions of this Agreement shall be found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired.  Further, any provision found to be invalid, illegal or unenforceable shall be deemed, without further action on the part of the parties to this Agreement, to be modified, amended and/or limited to the minimum extent necessary to render such clause and/or provision valid and enforceable.

B.    **Entire Agreement**.

This Agreement supersedes all prior written and verbal promises and agreements between the parties concerning the subject matter of this Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and may be amended, modified or superseded only by a written agreement signed by all parties impacted by the amendment.  No oral statements by any agent, representative or employee of MATHESON shall modify or otherwise affect the terms and provisions of this Agreement.

C.    **Governing Law**.

This Agreement shall be construed in accordance with the laws of the state of Colorado and, should either party have a claim arising out of this Agreement, the parties submit to venue and personal jurisdiction in the United States Bankruptcy Court for the District of Nevada.

D.    **No Admission Of Liability**.

The Matheson Defendants deny that MATHESON took any improper action against Plaintiff or that MATHESON violated any federal, state, or local law or common law principle in its treatment or compensation of Plaintiff.  This Agreement shall not be admissible in any proceeding as evidence of any improper conduct, wrongdoing or concession of liability on any allegation that has been made or that could have been made against Matheson in the Lawsuit, by MATHESON.

E.    **No Other Representations**.

Plaintiff acknowledges that no promises or representations have been made to induce Plaintiff to sign this Agreement other than those expressly set forth in this Agreement, and that Plaintiff has signed this Agreement as a free and voluntary act.

Plaintiff's Initials _____                    7

F.    **Assignment.**

Plaintiff may not assign Plaintiff's rights or obligations under this Agreement to any other party without the prior written consent of the Matheson Defendants. The Matheson Defendants may assign this agreement to MATHESON, or any of them, without Plaintiff's consent.

G.    **Authority.**

The undersigned each separately represent and warrant that they, respectively, have the right and authority to execute this Agreement and that they, respectively, have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims or potential Claims relating to any matter covered by this Agreement. The Debtor represents that its right and authority to execute this Agreement is conditioned on entry of a Final Order approving this Agreement and entry of the Confirmation Order.

H.    **Binding Effect.**

This Agreement is binding upon the parties, their heirs, representatives, executors, administrators, successors, and assigns.

I.    **No Waiver.**

Failure by any party to enforce any rights or remedies provided in this Agreement shall not be deemed a waiver of those rights.

J.    **Counterparts and Duplicate Originals.**

This Agreement may be executed in one or more counterparts, any one of which need not contain the signature of more than one party, and all of which taken together will for all purposes constitute one and the same agreement, binding on all of the parties, notwithstanding that all of such parties have not executed the same counterpart. Two or more duplicate originals of this Agreement may be signed by the parties, each of which shall be an original but all of which together shall constitute one and the same agreement.

K.    California Civil Code §1542 states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." **THE DEBTOR, MATHESON TRUCKING, INC. AND PLAINTIFF ALL EXPRESSLY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER CALIFORNIA CIVIL CODE §1542 AND EXPRESSLY ACKNOWLEDGE THAT THEY ARE WAIVING CLAIMS THAT THEY PRESENTLY DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN MUST HAVE MATERIALLY AFFECTED THEIR SETTLEMENT WITH ONE ANOTHER.** The advice of legal counsel has been obtained by all Parties prior to signing this Agreement. All Parties execute this Agreement voluntarily, including this waiver of California Civil Code §1542, with full knowledge of its significance, and will the express intention of waiving all claims, known or unknown, suspected or unsuspected."

BY SIGNING THIS AGREEMENT, THE UNDERSIGNED DOES ACKNOWLEDGE AND WARRANT: That the Agreement was first carefully read in its entirety by or to the

Plaintiff's Initials _____                    8

undersigned and was and is understood and known to be a full and final compromise settlement, release, accord and satisfaction and discharge of all claims, actions and causes of action and suits, as above stated; that the release was signed and executed voluntarily and without reliance upon any statement or representation of or by releases, or any representative, agent or doctor of same, concerning the nature, degree and extent of the damages, loss or injuries, or legal liability therefore; that the release contains the entire agreement of and between all of the parties mentioned herein and that all of the terms and provisions of the release are contractual and not a mere recital; that the undersigned are of legal age and capacity and competent to sign and execute the release and accept full responsibility therefore.   This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors and trustees.

ACKNOWLEDGED:

Plaintiff _____

Representative   of   Matheson   Flight Extenders, Inc.

_____

[Name of Plaintiff]

_____

[Name of Representative]

Dated:_____, 201__

Dated:_____, 201__

Counsel for Plaintiff

Representative of Matheson Trucking, Inc.

_____

[Name of Attorney]

_____

[Name of Representative]

Dated:_____, 201__

Dated:_____, 201__

Counsel for Matheson Flight Extenders, Inc. and Matheson Trucking, Inc.

_____

Stacey A. Campbell

Dated:_____, 201__

Plaintiff's Initials _____                9

**L.**   **No Construction Against Drafter.**
Each Party has had the opportunity to review this Agreement independently with their respective attorney and has participated in the drafting hereof. Any ambiguity shall not be construed against any one party merely because that party was allegedly the drafter.

**M.**   No course of dealing and no delay on the part of the Parties in exercising any right, power, or remedy under this Agreement shall operate as a waiver thereof or otherwise prejudice the Parties' rights, powers, and remedies conferred under this Agreement. No right, power, or remedy conferred by this Agreement shall be exclusive of any other right, power, or remedy now or hereafter available at law, in equity, by statute, or otherwise.

**YOUR SIGNATURE BELOW ACKNOWLEDGES THAT YOU HAVE READ THIS AGREEMENT CAREFULLY IN ITS ENTIRETY, THAT YOU KNOW AND UNDERSTAND ITS CONTENTS, AND THAT YOU ENTER INTO THIS AGREEMENT FREELY AND AS A VOLUNTARY ACT AND THAT YOU INTEND TO BE LEGALLY BOUND**

Plaintiff _____        Representative   of   Matheson   Flight
                                       Extenders, Inc.


_____        _____
[Name of Plaintiff]                  [Name of Representative]


Dated:_____, 201__          Dated:_____, 201__


Counsel for Plaintiff                Representative of Matheson Trucking, Inc.


_____        _____
[Name of Attorney]                   [Name of Representative]

Dated:_____, 201__          Dated:_____, 201__

                                     Counsel for Matheson Flight Extenders,
                                     Inc. and Matheson Trucking, Inc.


                                     _____
                                     Stacey A. Campbell

                                     Dated:_____, 201__

Plaintiff's Initials _____              10

# EXHIBIT 6

**From:** Brian Moore <<u>BMoore@jgllp.com</u>>
**Date:** September 11, 2015 at 9:04:02 AM MDT
**To:** Stacey Campbell <<u>stacey@campbell-litigation.com</u>>, "lynn feiger <u>lynnfeiger@gmail.com</u>"
<<u>lynnfeiger@gmail.com</u>>, Justin Plaskov <<u>jplaskov@lohfshaiman.com</u>>
**Cc:** Daniel Combs <<u>daniel@campbell-litigation.com</u>>, Amy Tirre <<u>amy@AMYTIRRELAW.COM</u>>
**Subject: RE: Camara, et. al. & Matheson, et. al.  Settlement Agreement**

Stacey,
Our clients offered to settle on terms that included payment of $2.3 million "up front," with no
contingencies.  Your clients have counteroffered on terms that include payment of $2.3 million in half a
year and multiple contingencies. By no stretch of the imagination does this amount to an offer and
acceptance. There is no "settlement agreement between the parties," and I trust your co-counsel will
avoid any misrepresentations to the bankruptcy court on that front.
To avoid uncertainty, we have been working hard to come up with a complete form of agreement
acceptable to all of our clients. We should have that to you early next week. It will be very different from
what you sent us, in material respects. Once you and your clients have had a chance to review and
discuss it, we should have a much better sense of whether it will be possible to reach a resolution at this
stage of the proceedings.
Regards,
Brian

```
Jester Gibson ▨ Moore, LLP
         Legal Counsel
      Brian T. Moore, Attorney
```

**From:** Stacey Campbell [<u>mailto:stacey@campbell-litigation.com</u>]
**Sent:** Friday, September 04, 2015 4:38 PM
**To:** Brian Moore; lynn feiger <u>lynnfeiger@gmail.com</u>; Justin Plaskov
**Cc:** Daniel Combs
**Subject:** Camara, et. al. & Matheson, et. al. Settlement Agreement

Brian, Lynn, and Justin

Attached for your review is the draft settlement agreement (written for Dean Patricelli)
documenting the settlement between the parties.  The Defendants will enter into a separate
settlement agreement similar to Mr. Patricelli's agreement, with each of the current
Plaintiffs.  Please review and let me know if you have any modifications to the settlement
agreement language by Friday, September 11, 2015.

Justin,

With respect to Mr. Kaba's interest in negotiating and/or assigning his settlement and in
response to your email message earlier today, I recommend that you read the settlement
agreement that Mr. Kaba entered into when he settled his claims.

Thanks,

Stacey Campbell
730 17th St. Ste. 740
Denver, Colorado 80202
DD: 303. 872.7258/ P: 303.536.1833 / M: 303.517.5037
stacey@campbell-litigation.com

# CAMPBELL
## LITIGATION, P.C.
DEFENDING CLIENT INTERESTS

CONFIDENTIALITY NOTICE:
DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressees. If you have received this communication in error, please call us (collect) immediately at (303) 536-1833 and ask to speak to Pat Bissonnette. Also please e-mail the sender and notify the sender immediately that you have received the communication in error.

# EXHIBIT 7

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC
ATTORNEYS AT LAW

900 CHERRY TOWER
950 SOUTH CHERRY STREET
DENVER, COLORADO 80246-2666
FACSIMILE 303.753.9997
TELEPHONE 303.753.9000
www.lohfshaiman.com

LYNN D. FEIGER
lfeiger@lohfshaiman.com

September 16, 2015

**VIA E-MAIL ONLY**

Stacey A. Campbell
Daniel M. Combs
Campbell Litigation, P.C.
730 17th Street, Suite 740
Denver, CO 80202
stacey@campbell-litigation.com
daniel@campbell-litigation.com

Re:    Camara, et al. v. Matheson Trucking, Inc., et al.
       U.S. District Court, 2012-cv-03040-CMA-CBS

Dear Stacey and Dan:

Please see the enclosed settlement offers with terms and conditions agreeable to Plaintiffs. In order for Matheson to accept an agreement from any one of the Plaintiffs, Matheson must accept the settlement offers attached hereto from all seven (7) Plaintiffs. In other words, acceptance of one offer is conditioned upon acceptance of all offers.

Matheson has until September 25, 2015 to accept this offer. If the offer is not accepted by that date, our clients have instructed us to withdraw the offer.

Very truly yours,

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC

Lynn D. Feiger
Enclosures
cc:    Clients
       B. Moore

## SETTLEMENT AND FORBEARANCE AGREEMENT

This Settlement and Forbearance Agreement ("Agreement"), which is effective as of the date of execution by all parties (the "Effective Date"), is between Dean Patricelli ("Plaintiff"), Matheson Trucking, Inc., and Matheson Flight Extenders, Inc. (the "Debtor," and jointly with Matheson Trucking, Inc., "the Matheson Defendants") (Plaintiff and the Matheson Defendants may be referred to collectively as the "parties"). In addition, Matheson Holdings, Inc., Mark Matheson, Robert Matheson, and Carol Matheson execute this agreement for the limited purposes identified herein.

## I.
## RECITALS

**A.**     Plaintiff previously was employed by Matheson Flight Extenders, Inc.

**B.**  .  Plaintiff initiated and participated in a lawsuit against Matheson Flight Extenders, Inc. and Matheson Trucking Inc. in the United States District Court for the District of Colorado styled *Camara, et al. v. Matheson Flight Extenders, et al.*, Case No. 12-cv-03040-CMA-CBS ("the Lawsuit").

**C.**     In a jury trial, Plaintiff prevailed and the Court entered a verdict in the amount of $2,274,800 in favor of Plaintiff, of which $274,800 represents compensatory damages and of which $2,000,000 represents punitive damages (the "judgment").

**D.**     The parties wish to resolve all claims asserted by Plaintiff in the Lawsuit and all other disputes and potential disputes with MATHESON (known and unknown).

**E.**     Should Plaintiff sign this Agreement, Plaintiff will be provided with consideration as set forth in this Agreement.

**F.**     On April 19, 2015, Defendant Matheson Flight Extenders, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, Case No. 15-50541-btb (Bankr. D. Nev.) (the "Bankruptcy Case").

**G.**     The Debtor and Matheson Trucking have jointly proposed a chapter 11 plan of reorganization in the Bankruptcy Case (as such will be amended, including amendments to reflect the terms of the Settlement Agreement, the "Plan"). The Debtor and Matheson Trucking are seeking the entry of an order confirming the Plan (the "Confirmation Order").

**H.**     The parties have filed post-trial motions in the Lawsuit and, if Defendants are not successful on the post-trial motions, Defendants intend to appeal the case to the Tenth Circuit Court of Appeals.

**I.**     Plaintiff has filed a Proof of Claim for $2,679,957.14 as Claim No. 20 on August 4, 2015 in the Bankruptcy Case based on the judgment, which included among other things, the amount of the judgment, interest, costs, back pay and attorneys' fees

Plaintiff's Initials _____

(the "Proof of Claim"). Plaintiff has motions pending in the Lawsuit which, if granted, would increase the amount of the Judgment in his favor to the amount of the Proof of Claim.

**J.**    This Agreement sets forth the entire understanding between Plaintiff and the Matheson Defendants concerning Plaintiff's Proof of Claim, Plaintiff's application for employment with and employment by Matheson Flight Extenders, Inc. and Plaintiff's disputes with the Matheson Defendants, known or unknown.

## II.
## DEFINITIONS

The following definitions shall be applicable for the purposes of this Agreement:

**A.**    "Agreement" means this Settlement Agreement and Release of All Claims.

**B.**    "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; the right to an equitable remedy for the breach of performance if such breach gives rise to a right for payment , whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed or undisputed, secured or unsecured; any debt, obligation, demand, cause of action, claim for relief, judgment, controversy or claim of any kind whatsoever between Plaintiff and MATHESON, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, retaliation, claim for attorneys' fees or costs, or any other legal theory; including claims under Title VII of the Civil Rights Act of 1964, as amended; claims under the Civil Rights Act of 1991; claims under 42 U.S.C. § 1981, § 1981a, § 1983, § 1985, or § 1988; claims under the Americans with Disabilities Act of 1990, as amended; claims under the Rehabilitation Act of 1973, as amended; claims under the Fair Labor Standards Act of 1938, as amended; claims under the Employee Retirement Income Security Act of 1974, as amended; claims under the Family and Medical Leave Act of 1993, as amended; claims under the Sarbanes-Oxley Act, as amended; claims under the Genetic Information Nondiscrimination Act of 2008; claims under the Worker Adjustment and Retraining Notification Act; claims under the Colorado Anti-Discrimination Act; claims under the Colorado Wage Claim Act; and claims under any other applicable federal, state or local statute, regulation, ordinance or common law principle, excluding, however, claims that cannot be released by private agreement as a matter of law.

**C.**    "Final Order", as used herein, means 14 days after entry of an order approving the terms of this Agreement pursuant to Fed. R. Bankr. Proc. 9019 (the "Rule 9019 Order") or 14 days after entry of the entry of the Confirmation Order if no appeal is taken from said orders. The parties agree to use best efforts to obtain expedited approval of this Agreement from the Bankruptcy Court.

**D.**    "Confirmation Order" means an order entered by the Bankruptcy Court approving the Stipulated Plan, as defined below.

Plaintiff's Initials _____    2

**E.**    "The Lawsuit" means the civil action filed by Plaintiff and others in the United States District Court for the District of Colorado styled *Camara, et al. v. Matheson Flight Extenders, et al.,* Case No. 12-cv-03040-CMA-CBS and any appeals and appellate remedies therefrom.

**F.**    "Judgment Creditors" means Mahamet Camara, Andre De Oliveira, Bemba Diallo, Salif Diallo, Macire Diarra, Ernie Duke, and Dean Patricelli.

III.
## COVENANTS

### A.    Stipulation as to Amount of Liability.

The parties hereby stipulate that Debtor and Matheson Trucking, Inc. are jointly and severally indebted to Plaintiff in the amount of $2,679,957.14. Debtor agrees that Plaintiff's Proof of Claim is allowed in its entirety, and will take no action to impair Plaintiff's ability to have that Proof of Claim allowed in full. Immediately upon full execution of this Agreement, Matheson Trucking, Inc. will execute and deliver to Plaintiff's counsel a Confession to Entry of Amended Judgment against it and in favor of Plaintiff in the amount of $2,679,957.14, in the form attached as Exhibit A (the "Confession to Amended Judgment"). Plaintiff's counsel will not file the Confession to Amended Judgment in the Lawsuit or release it to any other person unless the Matheson Defendants fail to make the Initial Payment, as defined below, when due, but if the Matheson Defendants fail to make the Initial Payment, then Plaintiff's counsel may immediately file the Confession to Amended Judgment, and Matheson Trucking, Inc. hereby waives all defenses to entry of an Amended Judgment thereon. Although Section IV.E.6. provides for the creation of a liquidating trust upon a plan payment default, which liquidating trust shall include the turnover of the assets of Matheson Trucking, Inc., Judgment Creditors shall be permitted to enforce the Amended Judgment against Matheson Trucking, Inc. in the event that its assets are not turned over and substantively consolidated into the liquidating trust.

### B.    Satisfaction Amount and Payment Schedule.

Notwithstanding the foregoing section III.A or any other provision of this Agreement, if the Matheson Defendants pay to Plaintiff and his attorneys the sum of $1,042,857.14 (the "Satisfaction Amount") on the following schedule (the "Payment Schedule"), then such payments shall constitute a complete accord and satisfaction of the Matheson Defendants' liability to Plaintiff: $328,571.43 on or before November 2, 2015 (the "Initial Payment"); and thirty-two quarterly payments of $22,321.43 each, with the first payable by March 20, 2016, and continuing for thirty-one calendar quarters thereafter (the "Quarterly Payments"). Each payment shall be allocated among lost wages, other compensatory damages, and attorney fees as shown on the schedule attached as Exhibit B hereto. Any payment may be made in advance without penalty and may be made by Debtor and/or Matheson Trucking, Inc. in any combination.

Plaintiff's Initials _____    3

**C.**    **Security Pending Initial Payment.**

The following provisions (the "Security Provisions") shall be in effect from the Effective Date until the Matheson Defendants have made the Initial Payment:

1.    Neither Debtor nor Matheson Trucking, Inc. shall transfer or hypothecate any property; provided, however, that with advance notice to Plaintiff, Matheson Trucking, Inc. may sell property on terms that require the purchaser to deliver the purchase price at closing directly or through a title company to the Judgment Creditors towards satisfaction of the Initial Payments due them under this and parallel agreements.

2.    If Wells Fargo releases its lien on any of the Supplemental Real Property Collateral as set forth in Section 5(f) of the Forbearance Agreement between it, the Matheson Defendants, and Matheson Holdings, Inc., then the entity which owns the property immediately shall grant a lien in favor of the Judgment Creditors to secure the Initial Payments due them under this and parallel agreements. Plaintiff shall release all such liens in his favor upon his receipt of the Initial Payment.

3.    Neither Debtor nor Matheson Trucking, Inc. shall make any payment or transfer of any property, money, etc., however characterized, to any of Mark Matheson, Robert Matheson, Carol Matheson, or any of their immediate family members.

**D.**    **Bankruptcy Court Approval.**

Within three (3) business days of the Effective Date of this Agreement, Debtor will file in the Bankruptcy Court a motion to obtain the Rule 9019 Order, in the form attached hereto as Exhibit C. As reflected in Exhibit C, that motion shall ask the Bankruptcy Court, in its Rule 9019 Order, to order the Matheson Defendants to comply with the provisions of section III.C hereof. Thereafter, the parties will cooperate in taking all further steps required to obtain the Rule 9019 Order.

If the Bankruptcy Court has not entered the Rule 9019 Order within forty-five days of the Effective Date, then any party may elect to rescind this Agreement, except that any party which has failed to act diligent good faith in seeking entry of the Rule 9019 Order shall have forfeited this right of rescission.

**E.**    **Stipulated Plan of Reorganization.**

Within ten (10) business days of full execution of this Agreement, Debtor will file in the Bankruptcy Court a revised proposed plan of reorganization (the "Stipulated Plan"). The Stipulated Plan will be consistent with the Amended Plan previously submitted by Debtor in the Bankruptcy Court, except that it shall incorporate all relevant terms of this Agreement, including but not limited to:  allowance of the Proof of Claim; the Satisfaction Amount; the Payment Schedule; the Security Provisions; _____. In addition, the Stipulated Plan shall provide:

Plaintiff's Initials _____                    4

1. that all avoidance actions in favor of Debtor and/or Matheson Trucking, Inc. are preserved and any statutes of limitations are tolled pending full payment of the Satisfaction Amount pursuant to the Payment Schedule;

2. that Mark Matheson, Robert Matheson, Carol Matheson, and Matheson Holdings, Inc. will receive a full release upon full payment of the Satisfaction Amount pursuant to the Payment Schedule;

3. for treatment of Wells Fargo's claim against Debtor, on terms approved by Plaintiff and the Official Committee of Unsecured Creditors ("Creditors Committee");

4. that if Wells Fargo loans to Debtor and/or Matheson Trucking, Inc. the funds required for the Initial Payment to all Judgment Creditors, then, but only then, Wells Fargo will receive a release;

5. for treatment of the claims of Debtor's insurers, Lumbermens Mutual Casualty Company, in liquidation, American Motorists Insurance Company, in liquidation, American Manufacturers Mutual Insurance Company, in liquidation, Old Republic Insurance Company, Reliance Insurance Company, in liquidation, XL Specialty Insurance Company, Greenwich Insurance Company, Insurance America, Inc. as unimpaired claims;

6. for a liquidating trust so that in the event of a default, including, but not limited to a payment default under the plan, the liquidating trust goes into effect, and all property of Debtor/the estate and all property of Matheson Trucking, Inc. vests in the liquidating trust, and the liquidating trustee may liquidate assets and pursue claims in order to pay creditors under the plan;

    a. In the event of a default under the plan by the Matheson Defendants, then the amount of Judgement Creditors' claim to be paid by the liquidating trustee shall be the full amount of Amended Judgment provided in Section III.A.

**F.** **Disclosures.**

Within fourteen days of the Effective Date, the Matheson Defendants shall provide all of the following information to Plaintiff:

1. full disclosure of any transfer by Matheson Trucking, Inc. to an insider between April 1, 2011 and present, including the completion of SOFA #3(b) and (c);

2. Invoices or other documents that provide the accounting/back-up for the "true up" for amounts paid by Debtor to Matheson Trucking, Inc. for the period January 1, 2015 to present;

Plaintiff's Initials _____    5

3. all of Debtor's leases and executory contracts;

4. vehicle appraisals;

5. consolidated audited financials 2010 forward;

6. all documents relating to insider loans:

    a. $1,000,000 to Mark Matheson;

    b. $1,290,000 to MOM/DECON; and

7. Documents evidencing any transfers by Debtor to insiders between April 1, 2011 and present

## IV.
## ADDITIONAL PROVISIONS

**A.**    **Tax Matters.**

The Matheson Defendants offer no tax advice and make no representations about the taxability of the proceeds or Plaintiff's obligation to pay taxes on them. Plaintiff agrees to pay any and all taxes that might be due from him on the money being paid to him, if any, and further agrees that the Matheson Defendants are not and shall not be liable for any portion of any such taxes for which Plaintiff is responsible. Plaintiff agrees to indemnify the Matheson Defendants for any and all penalties, fees, expenses, and attorneys' fees incurred by the Matheson Defendants in connection with litigation or administrative action pertaining to Plaintiff's failure to remit the taxes payable by him.

**B.**    **Stay of Lawsuit.**

Immediately upon full execution of this Agreement, counsel for the parties will file a Stipulated Motion to stay the Lawsuit, in the form attached hereto as Exhibit D. The parties further agree that they will cooperate in taking any additional steps necessary to obtain a stay as required by the Stipulated Motion.

**C.**    **Dismissal of Lawsuit.**

Provided the Matheson Defendants are not in default of this Agreement, then within one (1) week of the latter to occur of (a) timely making of the Initial Payment and (b) entry of a Final Confirmation Order, Plaintiffs will file in the Lawsuit a Stipulation for Dismissal in the form attached hereto as Exhibit E.

**D.**    **Tolling and Preservation of Avoidance Actions.**

By their signatures appearing below, each of Mark Matheson, Robert Matheson, Carol Matheson, and Matheson Holdings, Inc. agrees that: (1) all Statutes of Limitations and other time based defenses which they have to any claim which Debtor, Matheson

Plaintiff's Initials _____     6

Trucking, Inc., or their respective bankruptcy estates (present or future) may have against them will be tolled from the Effective Date until the Matheson Defendants have paid the full Satisfaction Amount to Plaintiff pursuant to the Payment Schedule; and (2) that all such claims shall be preserved by the Stipulated Plan to be submitted by Debtor to the Bankruptcy Court.

## E.    **Public Statements**.

Provided the Matheson Defendants are not in default of this Agreement, then upon his receipt of the Initial Payment, Plaintiff will provide a joint press release stating that the parties have amicably resolved their differences related to Plaintiff's employment and the jury trial verdict and have agreed to dismiss the Lawsuit.

Upon entry of the Rule 9019 Order, Plaintiff will immediately sign a joint confidential letter to the United States Postal Service ("USPS") explaining:

    a.    that the parties have settled their differences,

    b.    that former Plaintiff De Oliveira still works for Matheson Flight Extenders, and

    c.    that Plaintiff encourages USPS to continue to do business with the Matheson Defendants, given the resolution and the fact that Plaintiff De Oliveira remains employed by Matheson Flight Extenders.

## F.    **All Claims Liquidated by this Agreement**.

This Agreement is intended to liquidate all claims which Plaintiff may have as of the Effective Date against Debtor, Matheson Trucking, Inc., and any of their respect affiliates, shareholders, directors, officers, employees, or other agents. Accordingly, Plaintiff hereby releases all such claims except as limited herein, and subject to the right of rescission contained in section III.D hereof. This release applies to any claims brought by any person or agency on behalf of Plaintiff or any class or representative action pursuant to which Plaintiff may have any right or benefit. Plaintiff promises not to accept any recoveries or benefits which may be obtained on Plaintiff's behalf by any other person or agency or in any class or representative action that may include or encompass any of the released Claims, and Plaintiff assigns any such recovery or benefit to the Matheson Defendants. Plaintiff agrees not to initiate, participate in, or in any way contribute to any private civil action involving the released Claims.

## G.    **Rights Retained And Rights Waived**.

Plaintiff represents, as a material term of this Agreement, that, other than the Lawsuit, there are no charges or disputes pending before any governmental agency or other forum for which approval by the agency or forum is required for dismissal. The parties agree that nothing in this Agreement is intended to prevent, impede, or interfere with Plaintiff: (1) filing a timely charge or complaint with, or participating fully and honestly in any investigation or proceeding conducted by, the Equal Employment Opportunity

Plaintiff's Initials _____        7

Commission ("EEOC"), National Labor Relations Board ("NLRB"), the Occupational Safety and Health Administration ("OSHA"), or any other federal, state or local agency charged with the enforcement of any laws; (2) exercising rights under Section 7 of the National Labor Relations Act to engage in joint activity with other employees; (3) engaging in any future activities protected under the whistleblower statutes administered by OSHA; or (4) filing a future claim related to an exposure, or an occupational injury, or an occupational illness, whose existence was unknown, or reasonably could not have been known, to Plaintiff on the date Plaintiff signs this Agreement. However, if the EEOC, NLRB, or any other state, federal or local government agency commences an investigation or other legal proceeding on Plaintiff's behalf, Plaintiff specifically waives and releases the right, if any, to recover any monetary or other individual relief of any sort whatsoever arising from any such investigation or legal proceeding, except for any individual relief that cannot be waived as a matter of law. Plaintiff does not release any claims for workers' compensation benefits, unemployment compensation, claims for vested pension benefits, or any other claims or rights that cannot be released by private agreement as a matter of law.

**H.    No Disparagement.**

Plaintiff agrees not to disparage Matheson Defendants or any of their employees, products, abilities, or services. The Matheson Defendants agree that supervisory and management employees of the Matheson Defendants will not disparage Plaintiff, his work performance, his values, or his philosophies.

**I.    Agreement Not To Seek Reemployment.**

Plaintiff agrees never to seek direct or indirect employment or consulting or contradicting employment with the Matheson Defendants at any time after Plaintiff's execution of this Agreement. If the above provision is breached by Plaintiff, Plaintiff's application will be rejected without any resulting liability for the Matheson Defendants. In the event Plaintiff is employed as an employee, consultant, independent contractor, or otherwise, in contravention of the terms of this section, Plaintiff shall be subject to summary dismissal or discharge without any resulting liability for MATHESON. This provision shall not apply in the event Plaintiff is working for an entity that is acquired by the Matheson Defendants subsequent to the Matheson Defendants' execution of this Agreement. Although Plaintiff and the Matheson Defendants agree that Plaintiff is not eligible for rehire with the Matheson Defendants, Plaintiff may represent that Plaintiff is eligible for rehire for purposes of gaining other employment. The Matheson Defendants will make no representations to prospective employers regarding Plaintiff's status except as set forth in section III.K, below.

**J.    Neutral Reference.**

Should a prospective employer of Plaintiff need to verify Plaintiff's employment with Matheson Flight Extenders, Inc., the prospective employer will be directed by Plaintiff to speak with the Human Resources Department by calling _____ who will confirm Plaintiff's dates of employment and job titles, but will provide no other information.

Plaintiff's Initials                     8

**K.**    **Litigation to Enforce Agreement.**

In the event of any litigation between the parties or their successors to enforce this Agreement, or otherwise arising out of it, the prevailing party shall be entitled to an award against the other of all legal fees and costs he or it reasonably incurs in connection there with.

**L.**    **Severability.**

In case any one or more of the provisions of this Agreement shall be found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired. Further, any provision found to be invalid, illegal or unenforceable shall be deemed, without further action on the part of the parties to this Agreement, to be modified, amended and/or limited to the minimum extent necessary to render such clause and/or provision valid and enforceable provided, however, that if the provision is a material term that would nullify the bargained-for consideration for the parties' Agreement, the Agreement shall not be enforceable.

**M.**    **Entire Agreement.**

This Agreement supersedes all prior written and verbal promises and agreements between the parties concerning the subject matter of this Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and may be amended, modified or superseded only by a written agreement signed by all parties impacted by the amendment. No oral statements by any agent, representative or employee of the Matheson Defendants shall modify or otherwise affect the terms and provisions of this Agreement.

**N.**    **Governing Law.**

This Agreement shall be construed in accordance with the laws of the state of Nevada and, should either party have a claim arising out of this Agreement, the parties submit to venue and personal jurisdiction in the United States Bankruptcy Court for the District of Nevada.

**O.**    **No Other Representations.**

All parties acknowledges that no promises or representations have been made to induce them to sign this Agreement other than those expressly set forth in this Agreement, and that they have signed this Agreement as a free and voluntary act.

**P.**    **Assignment.**

Plaintiff may not assign Plaintiff's rights or obligations under this Agreement to any other party without the prior written consent of the Matheson Defendants, which consent may not be unreasonably withheld.

Plaintiff's Initials                 9

**Q.    Authority.**

The undersigned each separately represent and warrant that they, respectively, have the right and authority to execute this Agreement and that they, respectively, have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims or potential Claims relating to any matter covered by this Agreement. The Debtor represents that its right and authority to execute this Agreement is conditioned on entry of a Final Order approving this Agreement and entry of the Confirmation Order.

**R.    Binding Effect.**

This Agreement is binding upon the parties, their heirs, representatives, executors, administrators, successors, and assigns.

**S.    No Waiver.**

Failure by any party to enforce any rights or remedies provided in this Agreement shall not be deemed a waiver of those rights. No course of dealing and no delay on the part of the Parties in exercising any right, power, or remedy under this Agreement shall operate as a waiver thereof or otherwise prejudice the Parties' rights, powers, and remedies conferred under this Agreement. No right, power, or remedy conferred by this Agreement shall be exclusive of any other right, power, or remedy now or hereafter available at law, in equity, by statute, or otherwise.

**T.    No Construction Against Drafter.**

Each Party has had the opportunity to review this Agreement independently with their respective attorney and has participated in the drafting hereof. Any ambiguity shall not be construed against any one party merely because that party was allegedly the drafter.

**U.    Counterparts and Duplicate Originals.**

This Agreement may be executed in one or more counterparts, any one of which need not contain the signature of more than one party, and all of which taken together will for all purposes constitute one and the same agreement, binding on all of the parties, notwithstanding that all of such parties have not executed the same counterpart. Two or more duplicate originals of this Agreement may be signed by the parties, each of which shall be an original but all of which together shall constitute one and the same agreement.

Plaintiff's Initials                     10

**YOUR SIGNATURE BELOW ACKNOWLEDGES THAT YOU HAVE READ THIS AGREEMENT CAREFULLY IN ITS ENTIRETY, THAT YOU KNOW AND UNDERSTAND ITS CONTENTS, AND THAT YOU ENTER INTO THIS AGREEMENT FREELY AND AS A VOLUNTARY ACT AND THAT YOU INTEND TO BE LEGALLY BOUND**

ACKNOWLEDGED:

Representative of Matheson Flight Extenders, Inc.

_____

Dean Patricelli

Name: _____

Dated: September _15_, 2015

Dated: _____, 2015.

Counsel for Plaintiff:

Representative of Matheson Trucking, Inc.

_s/ Brian T. Moore_

_____

Brian T. Moore

Name: _____

Dated: September _16_, 2015

Dated: _____, 2015.

Counsel for Matheson Flight Extenders, Inc. and Matheson Trucking, Inc.

_____

Stacey A. Campbell

Dated: _____, 2015.

Plaintiff's Initials _____

11

# EXHIBIT 8

**Cecilia Lee**

| | |
|---|---|
| **From:** | Kaaran Thomas <kthomas@mcdonaldcarano.com> |
| **Sent:** | Tuesday, September 22, 2015 8:42 AM |
| **To:** | Cecilia Lee |
| **Cc:** | Jeff Hartman; Amanda Perach |
| **Subject:** | Re: Matheson Flight Extenders |

Judge Beasley told you to instruct Sallie to provide trucking schedules and sofas and 3 month operating reports. If he had believed there was a settlement he would not have done so. If you believe there is a settlement then file your motion.

As for meeting, my husband had a quadruple bypass yesterday and is still in intensive care . I cannot say what we happen next week.
My actions are triggered by the deadlines you have set regarding confirmation. If you think you have a settlement why not stay everything pending resolution of that issue. As you suggest the resolution will dramatically affect, if not eliminate my role. An argument about the issue coupled with continued failure to disclose will only cause additional expense

Sent from my iPhone

On Sep 22, 2015, at 8:28 AM, Cecilia Lee <C.Lee@Lee-High.com<mailto:C.Lee@Lee-High.com>> wrote:

Kaaran -

    Let's be clear on a few points.  This is not an opportunity for you to continue to manufacture issues about documents that you claim the Debtor has not provided; it is about any suggested additions the Committee has to the Disclosure Statement to address its potential objections.  Considering the fact that two of your committee members and the remaining five of your original clients made an unconditional offer of settlement on August 19, the need for additional documents to determine the adequacy of the disclosure statement is illusory, at best.

    Let's also be clear that it is not up to your clients to inform you whether they have settled because Judge Beesley, with only a brief review of the parties' correspondence, readily concluded that it appeared that they had formed a contract with the Debtor and Trucking.  I am frankly stunned that you would ignore the Court's own comments.

    Your silence on the significant questions we have raised below speaks volumes.

    Jeff and I are both available next week to discuss the issues raised in my email below.  Please give us some dates and time you are available.

Cecilia


Cecilia Lee, Esq.


LEE & HIGH, LTD.

448 Ridge Street

Reno, Nevada  89501

Telephone:  (775) 324-1011; Fax:  (775) 324-0113

c.lee@lee-high.com<mailto:c.lee@lee-high.com>

www.lee-high.com<http://www.lee-high.com>


Connect with us:  Facebook / Google+ / LinkedIn

CONFIDENTIALITY NOTICE:

DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee(s). If you have received this communication in error, please call us (collect) immediately at (775) 324-1011 and ask to speak to Taryn Ciardella. Also please e-mail the sender and notify the sender immediately that you have received the communication in error.

Thank you.

Tax Opinion Disclaimer

To comply with IRS regulations, we advise that any discussion of Federal tax issues in this E-mail was not intended or written to be used, and cannot be used by you, i) to avoid any penalties imposed under the Internal Revenue Code or, ii) to promote, market or recommend to another party any transaction or matter addressed herein.


-----Original Message-----
From: Jeff Hartman [mailto:jlh@bankruptcyreno.com]
Sent: Tuesday, September 22, 2015 7:57 AM
To: 'Kaaran Thomas'; Cecilia Lee
Cc: 'Amanda Perach'
Subject: RE: Matheson Flight Extenders


Anytime next week is better for me than this week.

Jeff Hartman


-----Original Message-----

From: Kaaran Thomas [mailto:kthomas@mcdonaldcarano.com]

Sent: Monday, September 21, 2015 7:27 PM

To: Cecilia Lee

Cc: Jeff Hartman; Amanda Perach

Subject: Re: Matheson Flight Extenders


Cecilia, I look forward to meeting with you. In the meantime, would you please send the documents we have requested so that we can have an informed meeting. At this time, I have not heard from the committee members that they have settled. I have forwarded your email to them for confirmation.


Sent from my iPhone


On Sep 21, 2015, at 6:53 PM, Cecilia Lee <C.Lee@Lee-High.com<mailto:C.Lee@Lee-High.com<mailto:C.Lee@Lee-High.com%3cmailto:C.Lee@Lee-High.com>>> wrote:


Kaaran -


        I write to follow up on Judge Beesley's direction at the September 14 hearing that we meet to discuss the upcoming hearings.  As you know, the Debtor's disclosure statement is scheduled for hearing on October

19 and the Debtor has filed today a motion to assume the Professional Services Agreement that is set for hearing on October 19.  That motion was necessitated by your September 10, 2015 letter demanding that the Debtor sue MTI.  We have repeatedly told you throughout this case that the relationship between Flight and Trucking is highly beneficial to Flight; perhaps now that the Liquidation Analysis is on file and addresses this synergism you will believe what we have been telling you.

In anticipation of meeting, we have several issues we would like to discuss with you.  These include the disclosure statement, which we will amend to address reasonable concerns you have.  At this time, I do not believe we will be continuing the disclosure statement hearing.

However, in light of Judge Beesley's comments about the efficacy of a disclosure statement objection and in light of the fact that all three of your committee members have now settled for an amount and payout terms, it is difficult to understand the nature and extent of the interests you represent and why there would be any objection to the disclosure statement at all.  Perhaps you can explain this to us.  For example, when you first relayed to us that you were informed of the settlement, you stated several times that the committee would stand down on nearly every issue which appeared to be the appropriate position for the

Committee to take.   Only after the Debtor and Trucking relayed their draft

settlement agreement to the Plaintiffs did the Committee's stance change and your efforts again started to escalate, with threats to seek standing to sue Trucking, allegations about our claims of confidentiality being in bad faith, and the filing of your motion to compel.  We would like to be persuaded that these actions are unrelated to the Plaintiffs' position (which we understand to be that there is no settlement) and, more specifically, to what strongly appears to be use of the committee to obtain some form of leverage over the Debtor.  This impression is of all the more concern to us upon consideration that, in Judge Beesley's words, the "elephant in the room" is the Plaintiffs.  The Debtor simply does not have issues with its other unsecured creditors and it is difficult, if not impossible, to understand how the unsecured creditors are benefitted by any agenda set by the Plaintiffs.

Please let me know your availability to meet in the near future.  I will not be able to meet toward the end of this week but can make myself available tomorrow, Wednesday morning and anytime next week.  By copy of this email to Jeff, I ask for his input of an appropriate time to meet.

Cissy

Cecilia Lee, Esq.

<image001.jpg>

Lee & High, Ltd.

448 Ridge Street

Reno, Nevada  89501

Telephone:  (775) 324-1011; Fax:  (775) 324-0113 c.lee@lee-high.com<mailto:c.lee@lee-high.com<mailto:c.lee@lee-high.com%3cmailto:c.lee@lee-high.com>>

www.lee-high.com<http://www.lee-high.com>

Connect with us:  Facebook<https://www.facebook.com/LeeHighLtd> /

Google+<https://plus.google.com/107746641498988658938/posts> /

LinkedIn<https://www.linkedin.com/pub/cecilia-lee/60/427/53b>

CONFIDENTIALITY NOTICE:

DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee(s). If you have received this communication in error, please call us (collect) immediately at (775) 324-1011 and ask to speak to Taryn Ciardella. Also please e-mail the sender and notify the sender immediately that you have received the communication in error.

Thank you.

Tax Opinion Disclaimer

To comply with IRS regulations, we advise that any discussion of Federal tax issues in this E-mail was not intended or written to be used, and cannot be used by you, i) to avoid any penalties imposed under the Internal Revenue Code or, ii) to promote, market or recommend to another party any transaction or matter addressed herein.